THE CITY OF ATLANTA vs. WORD.

1. Although where a husband and wife were jointly in possession of realty, the presumption would be that the possession was that of the husband, yet where, in a suit by the wife for damages to the realty resulting from the grading of a street, the husband testified that the joint possession was in right of the wife, and where a deed to the wife was put in evidence, this was sufficient evidence of ownership by the wife to warrant a recovery by her, and a non-suit was properly refused. If the deed was introduced at any stage of the trial before verdict, a new trial will not be granted because of a refusal to grant a nonsuit.

2. There was no error in admitting evidence in respect to damage to flooring, papering and the brick walls of the house, because such damage was to the freehold. The possession of a married woman under a deed to her was sufficient title to authorize a recovery by her for such injury to the realty.

3. Where suit was brought against a municipal corporation for damages resulting from the grading of a street, or the construction or change of a sewer, or other like improvements necessary to the city's advancement and prosperity, if the work was done with reasonable and proper care and skill, any increase of value arising to the property from the grading could be set up to diminish the damages, or defeat a recovery if equal to the damage. But if the work was negligently, carelessly and unskillfully done, and this caused the damage, the rule announced would not apply, and increase of value arising from grading the street could not be set up to diminish or defeat the recovery of damages resulting from such negligence.

(a) Prior to the constitution of 1877, a municipal corporation was not liable for damages resulting from the legislative act or exercise of judgment in ordering a street to be graded or a sewer therein to

be constructed; but if the ministerial work of constructing such improvement was negligently done, the city was liable. Under the constitution of 1877, the municipal corporation is made liable for damages resulting from such work, however skillfully done. It is against such damages, where the work is carefully done, that increase of value by reason of the work may be set up. For damages from careless, unskillful and negligent ministerial work, such set-off never was allowed.

(*b*) There being evidence tending to show that a part of the damages resulted from the change of grade of the street, as to damages resulting from that cause increase of value arising therefrom could be shown, and evidence for that purpose was admissible.

4. Where an ordinance of a municipal corporation prohibited any connection with its main sewers from any lot without its permission and except under its supervision, and imposed a penalty for so doing, if a connection was made, the presumption of innocence of crime would raise an inference that permission was obtained and the law complied with. But this presumption was subject to be rebutted, and was so rebutted in this case.

(*a*) If the city recognized this connecting sewer by having it worked upon by those engaged in working on its own sewers, or by other acts of recognition of it as under the care of the city, on clear proof thereof, it might be estopped from enforcing the ordinance, and the property owner might be enabled to recover for damages connected with such sewer, in spite of the trespass of herself or ancestors in the title upon the city's sewers without leave; but the fact that a contractor to lay sidewalks merely moved the pavement and put it back, would hardly estop the city; and there was no evidence to work such result in this case.

October 19, 1886.

Husband and Wife. Municipal Corporations. Streets and Sidewalks. Sewers. Negligence. Constitutional Law. Damages. Estoppel. Before Judge VAN EPPS. City Court of Atlanta. June Term, 1886.

On May 12, 1885, Mrs. H. S. A. Word brought an action for damages against the city of Atlanta, alleging, in brief, as follows: She is the owner of a house and lot on Whitehall street in Atlanta. It was the duty of the city to provide sufficient sewerage to carry off rain-water. Not regarding this, it elevated the grade of the street until it was necessary for the lot to be filled with earth, thereby

leaving the house below the level, and making it impossible to drain the premises except by artificial sewers connected with the sewer-mains of the city in the street.   On buying the property, the plaintiff was compelled to put drains in the lower portion of the house to connect it with the city sewer, but by reason of the insufficiency of such sewer to even carry off the water which fell in the street, the rain-water has been continually forced back from the sewer into the plaintiff's yard and house, causing the floors of the latter to rot, etc.   In the spring of 1884, the defendant again elevated the street in front of the property about eighteen or twenty inches, aggravating the former injury, and being in itself a distinct trespass.

It is unnecessary to set out the evidence.   The jury found for the plaintiff $370.   The defendant moved for a new trial on the following grounds:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court refused a nonsuit.

(3) Because the court rejected testimony to the effect that after the city's work on the street was completed, the value of the plaintiff's property was equal to or greater than it was before, and that the benefits which it received from the street improvement were equal to or greater than any damage it might have sustained.

(4) Because the court admitted evidence of damage to the walls and other damage to the freehold estate caused by water which ran across the sidewalk, and that which came from the rear and could not find an outlet.

(5) Because the court charged as follows: "The city, in performance of the ministerial act of constructing a sewer along plaintiff's front, would be bound to use ordinary care and diligence in its work, and if the jury believe from the evidence that the sewer was of insufficient capacity, and was not capable of carrying away the water that collected there in view of the locality and the seasons of the year, and such collections of water as in times of rains

might ordinarily and reasonably be expected to go into said sewer, and damage resulted to plaintiff by reason of the negligence and unskillful construction of said sewer, plaintiff would be entitled to recover such damages as the evidence shows she has sustained."

(6) Because the court charged as follows : " A section of the ordinances of the city of Atlanta introduced in evidence prescribes the method by which private drains of a citizen may be connected with street sewers, and another section provides for the punishment of a person as for a crime who makes such connections without requisite au · thority. If it appears from the evidence that, before the occupancy by the plaintiff of the premises in question, a private drain on her lot had been connected with a sewer in front of her premises and prior to the time of the overflows complained of, then, in the absence of proof to the contrary, the law, which holds all persons to be innocent of all illegal or immoral or criminal acts until proven guilty, will presume that said private drain was connected with said sewer under proper license or, authority."

The motion was overruled, and the defendant excepted.

J. B. GOODWIN ; J. T. PENDLETON, for plaintiff in error.

ALEXANDER & TURNBULL, for defendant.

JACKSON, Chief Justice.

This is an action to recover damage from the city of Atlanta for improper, negligently constructed and inadequate sewerage upon Whitehall street after its elevation by grading the same. This negligence, it is alleged, and was insisted upon before the jury, caused the water from heavy rains to overflow plaintiff's lot and house and greatly to damage the latter in the walls by loosening the cement, in the papering by ruining it, in the flooring by rotting it, and in this way compelling her to expend money and to apprehend more expense from heavy rains from time to

time. The jury found for her $370. The city, on being denied a new trial, excepted, and assigns error here on this denial.

1. The nonsuit asked for by the city for defect in her title is the first point to be considered. The plaintiff showed a deed to herself with possession in herself and husband. Without the deed, possibly possession alone would not enable herself alone to recover—the presumption being that the possession was his, as head of the family, and not hers. The husband himself, however, swore that the joint possession was in her right, and that rebutted the presumption that it was his; and when the deed was afterwards introduced, all doubt vanished, and no motion for a new trial, based on the insufficiency of her title, could prevail when the deed to her appeared at any stage of the case before verdict. 53 *Ga.* 454, 685 ; 67 *Id.* 144.

2. For the reason above given, the objection to testimony in respect to damage to flooring, papering and to the brick walls of the house requiring cement because such was damage to the freehold, was properly overruled. The possession of Mrs. Word, with the deed under which she held, is sufficient title in her, to recover for such injury to the realty. Ill. & St. L. R. R. *vs.* Cobb, 94 Ill. 55.

3. One main question, however, made in the record is this: Whether, under the allegations in the declaration and the facts of the case, the court should have admitted evidence that the elevation of the grade increased the value of the plaintiff's property to an amount equal to or exceeding the injury done her, in order to set off the same to the extent of barring recovery on her part.

In *Green's* case, 67 *Ga.* 386, affirmed in *Moore's* case, 70 *Ga.* 611, it is held that whenever, by reason of altering the grade of a street, a person is damaged in property thereon, such person may recover, provided the increased value of that property by the alteration of the grade does not equal or exceed the damage done the property. The

constitution of 1877 gave the individual the right to recover in such case in the view this court took of the provisions of that instrument,—the clause therein which requires the public, for damage to property as well as for seizure of it, to make just compensation; but this court also held at the same time that the compensation must be just only, and that if the same thing which injured property also benefited it, injuring in one respect yet benefiting in another respect to the same degree, it would not be just compensation to count the injury and make no note of the benefit. Hence, we held that the benefit should be deducted from the injury, and just compensation would be made the person complaining when he got every cent of damage done his property less its increase of value by the improvement made. No other rule of compensation would be a just rule. Therefore, in the case before us, if the grade of the street in front of the plaintiff's house and lot, about the proper construction of which there is no complaint, precipitated the water or any portion of it upon her house or lot to its injury and damage, whilst she might recover for such injury so caused to the extent of just compensation for it, yet if her property was increased in value by the same act of grading the street to the same extent that house and lot were injured, she could not recover, or if the value was increased less than the damage, she could recover only the difference. Nor do we see why the same principle of justice would not apply as well to sewerage properly constructed, or to any other improvement of its streets and alleys necessary to the city's advancement and prosperity. But if either in grading or in sewerage, negligence in the one or the other caused the damage to the citizen's property, the case would fall without the rule, because the damage would follow, not from the lawful act of grading or sewerage, but from the careless and negligent manner of doing the act.

It follows necessarily that if this suit, as confined by the able judge who tried it, had been an action for dam-

age incurred by the elevation of the grade, and water from it thrown upon the house and lot; if the court had allowed the jury to consider damage caused by the elevation of grade, and had not confined the jury strictly to damage flowing directly from the negligence of the city in constructing a sewer incapable of carrying off the water,—then indeed testimony of increased value in the house and lot by reason of the grade's being raised, would have been clearly admissible, and would have been, if proved large enough, a complete set-off and bar to damage caused by the raised grade and the overflow from it. A careful examination of the entire charge shows, however, that the jury were restricted to the consideration only of that damage which the sewer, by reason of its insufficient capacity to carry off the water, directly caused, so far as the judge could do so. If confined to that, and if the damage was caused by its negligent and careless construction and its inadequate capacity to carry off the water, and if the verdict only measured that damage, no increase of value by an elevated grade can be set off in favor of such negligence by the ministerial officers and agents of the city.

But it is true that allusion is made to the raising the grade in the declaration, and some of the testimony speaks of its alteration of the natural declivity of the street and its cause of water changing its course, and testimony was in that water flowed over the sidewalk without regard to the sewer or its negligent construction; and whilst the able judge endeavored to restrict the jury to the damage caused by the sewer, it is doubtful, to say the least, that even his firm hand and great authority succeeded in doing so. The jury did find damage to the cement on the wall, and there is evidence that this was caused by the water ponded in the yard, which resulted from the flow over the sidewalk from the street as graded. Such being the testimony let in and the verdict rendered, it seems impossible, perhaps, at least improbable, that all the damage resulted from the negligent and unskillful laying of the sewer and its want of ca-

pacity to carry off the water; some must have come from the raised grade, about the skillful and proper construction of which there is no complaint. For the damage to the house and lot from the bad construction of the sewer by the ministerial agents of the city, for negligence in such work by its servants and ministerial officers, the city was liable before the constitution of 1877. In the leading Georgia case, *Markham vs. The City of Atlanta*, 23 *Ga.* 402, in respect to injury done by grading, Judge Lumpkin says: "He" (the complainant) "does not charge that the improvement is not necessary for the welfare of the city, or that said work is capriciously and unskillfully made," intimating that had it been so, an action would lie, even if an injunction would not be granted. Even as it was, he concludes by saying: "We simply say that if there be any redress, it is by action against the corporation and not by injunction," thus intimating that the right of action was doubtful only where the work was done carefully and skillfully, and would not be beyond doubt if the work had been done negligently and unskillfully.

In the next case, the *City of Rome vs. Omberg*, 28 *Ga.* 46, the agent of the city in making the grade did nothing unskillfully or negligently, but the allegation is that the street adjoining Omberg's lot was cut down, "whereby his fence was undermined and thrown down," "and that it would cost about one hundred and twenty-five dollars to build a stone wall sufficient to prevent the wasting and crumbling away of the bank, and to secure the fence from being undermined," and in the charge of the court to the jury, the court made no allusion to any negligence or un-skillfulness, but without any negligence at all, the jury were instructed, "that if the injury complained of had occurred within four years from the commencement of the action, and they should believe that it resulted from the act of the defendant, then the plaintiff was entitled to recover whatever damages he had proved." The jury found $125, the proved cost of the stone wall, and this

court reversed the judgment, holding that the act was within the power of the city on its own street, and that Omberg must build with his own money the stone wall. In this case, it thus appears that the ministerial agents did only what the city ordered; made the grade, directed and did it well and skillfully, so far as the report shows.

The next case is *Roll vs. The City of Augusta*, 34 *Ga.* 326, where it was alleged that the city had authorized a railroad company to erect a track on the street and causing plank roads to be constructed, by which parts of the streets were elevated, and insufficient drainage having been provided, his property was overflowed. On the trial, Roll proved "that by elevations and changes made in constructing the several roads, water was thrown upon his premises and into his houses after rains, causing a damage of $1,600 per annum," and further injuries from the running the cars, keeping people on horses from reaching his carriage shops. In delivering the opinion affirming the judgment for the city, Judge Lumpkin merely says that the authorities are against the recovery and that *Rome vs. Omberg* covers the case. No unskillful or negligent work is proved. The railroad constructed the works just where the city authorized it to be done, and it was, so far as the report shows, skillfully and not capriciously done. The damage was consequential on the act, not on careless or unskillful work; but the road-bed and plank-road necessarily required some elevations and excavations. It is true that an allegation is made that "no adequate drainage was provided," but with the allegation it rests; nothing more is said about it on the trial in the evidence reported.

The last time the question came before this court in respect to grading the street, prior to the operation of the constitution of 1877, is to be found in the 66th *Ga. Reports*, p. 80, *Fuller vs. The City of Atlanta.* The transaction occurred in 1870 and 1871, and subsequently prior to the operation of the constitution of 1877, although finally ruled by this court in 1880. Fuller did not recover, but

the presiding judge laid down the law fully, and this court affirmed the judgment. Mr. Justice Crawford, delivering the opinion, said: " The objection urged against this charge is, that the judge erred in saying that the authority to raise or alter the grade of the streets was a judicial (legislative is the better word) act. We think that there is no question but the judge laid down the law correctly. Such a power granted to a municipal corporation is to be exercised under its legislative discretion, and when it has been resolved upon, the construction of the work only is ministerial." The charge he was commenting upon is, " Under this grant, they had authority to raise or alter the grade of the streets in any manner and to any extent that they deem proper. The exercise of this authority was what the law calls a judicial (legislative) act, and the city could not be held responsible for any errors of judgment that may have been committed by its chosen officers in the exercise of such judicial functions. If the city raised or altered the grades of the streets contiguous to the plaintiff's property, as alleged in the declaration, and if they exercised reasonable care in doing so, and if, notwithstanding the exercise of such reasonable care, the plaintiff's property was injured and damaged by reason of such altering of the grade of the streets as alleged, the city would not be liable for the injury caused."

So that, before the constitution of 1877, this court held that reasonable care must be taken in constructing the grade, and if damage resulted from careless and unskillful construction, the ministerial act of its servants, the city would be liable, though not for any error of judgment in the legislative act, or exercise of judgment in ordering the work done by the council.

Judge Crawford says further for this court: " If any principle of law could be settled, it would seem that the doctrine that a municipal corporation, acting under authority legally conferred, to grade the streets, was not liable for injuries done to the property of an adjacent land-

owner, provided it exercised reasonable care and skill in the performance of the work." And in the same case, the same principle is applied to sewers. The presiding judge charged: "The city council has a right to exercise their discretion in altering or changing sewers, and if it is done with reasonable care and in the proper manner, they would not be liable for any damage done thereby. If done, however, carelessly and negligently, and injury resulted, they would be liable to the extent of the damage caused by such injury." Upon this charge, Judge Crawford said for all the bench: "We think that the charge puts the law upon this issue without injustice or want of fairness to the plaintiff in error. The judge said that if, afterwards and at a different time from that alleged in the declaration when the grading was done, the city negligently permitted the mouth of the sewer to be obstructed so as to injure plaintiff, that would be a separate cause of action. But if it occurred during the time of the grading or altering the grade of the street, and before it was finished, then it would be a proper subject for their consideration, under the same rules of liability on the part of the defendant as already explained to them."

It seems thus to be clear that in grading or in constructing sewers skill and care must be used, it being ministerial work, and if not used, the city was liable prior to, and exclusive of, the constitutional provision now of force. That provision makes the city compensate for the act, however skillfully done, if damage ensue, by paying the damage; and it is to cases of that sort, where the work is carefully done and just compensation must be given, that this court allows the additional value of the property by reason of the work to be set off, so as to make the just compensation that the constitution requires, and to confine it within the limits of justice. For careless, unskillful and negligent ministerial work, such set-off never was allowed within my reading and memory. We conclude, therefore, that in so far as the damage resulted from the

sewer and its unskillful and negligent construction, if the jury should so find, there can be no set-off by increased value of property; but so far as injury was caused, not by the inadequate and illy constructed sewer, but by the grade of the street, the increased value can be set off. And therefore, on the case made by the pleadings and proof in the record, we think testimony should have been let in to show the increased value of the property of defendant in error to set it off against damage from the water that flooded the lot from the graded street, and not from the badly constructed sewer.

4. Another important question arises out of the ordinance of the city, which prohibits any connection with its main sewer from any lot without its permission and under its supervision. We think that as a penalty enforced by criminal proceedings awaited any who neglected to get the permission, the presumption of innocence of crime will infer that the plaintiff or her ancestor in title procured the permission and complied with the law. 3 East. 104, 10 *Id.* 352; 2 B. & A. 556; 1 Greenleaf, §35. Yet we are equally clear that this, like all presumptions, may be rebutted by proof, and it appears from this record that it was rebutted. Mr. Weed made the connection in 1881; Mr. Haygood altered the connecting sewer in 1883; Mr. Clayton's testimony seems to conclude a fair, mind that Mr. Weed got no permission in 1881, and Mr. Haygood testifies that he had none in 1883.

It is contended, however, and the court charged the jury on the point, that the city is estopped by ratification, because its servants and employés did work on this connecting sewer and thereby the city recognized its legality. *W. & A. R. R. vs. Atlanta,* 74 *Ga.* 774, and 4 Wallace, 657. But we fail to see in this record evidence of such work, except by Mr. English, and his extended only to moving it when he laid the pavement and then put it back again. We hardly think that such evidence from a contractor of the city would estop it from calling for evidence

of permission to connect with the main sewer, especially when the evidence seems so strong that there was no permission. If the city did recognize it by working upon it by those engaged on its own sewers, or by other acts of recognition of it, as under the care of the city, then it might be estopped, upon clear proof of such recognition, from enforcing the ordinance against the defendant in error, and enable her to recover notwithstanding the trespass of herself or ancestor in title upon the city's sewerage without leave. But we cannot find such evidence in this record.

The conclusion we reach is, that the ends of justice under the law demand a reversal of the judgement of the city court and the grant of a new trial, and it is so ordered.

Judgment reversed.