TAYLOR *v.* HARTSFIELD, administrator.

FISH, C. J. 1. Where in a claim case the plaintiff in fi. fa. introduced in evidence the entry of levy, which contained a statement that the defendant in fi. fa. was in possession of the land levied on at the time of the levy, and also introduced parol evidence tending to show such possession, but later introduced other parol evidence tending to show that the defendant was not in possession at the time of the levy, but that the claimant was then in possession, it was error for the presiding judge to direct a verdict finding the property subject. He should have submitted to

the jury the question thus raised by this conflicting evidence as to possession.

2. In a claim case, if the plaintiff in execution makes out a prima facie case, and the claimant seeks to show title to the land levied on, it is not sufficient for that purpose to introduce a deed from a third person who is not shown to have had title, or to have been in possession at the time of the making of the deed.

(a) In the present case, the deed sought to be introduced was claimed to have been made by a corporation. The evidence failed to show that such corporation was in possession, but tended to show that its president, as an individual, held the land as his own.   •

(b) Objection having been made to such deed when it was introduced, and it having been admitted temporarily, but subject to·a renewal of the motion, and the evidence, when the claimant closed, failing to show either title or possession in the corporation when the deed was made, its exclusion from evidence, on motion, was not erroneous.

3. When a deed purporting to have been made by a corporation, through its president, is offered in evidence and objection is duly raised thereto, authority of the president to make such deed should be shown. If the deed has the seal of the corporation attached thereto, this will furnish presumptive evidence of such authority.

          *Judgment reversed. All the Justices concur.*

               MAY 11, 1910.

Claim. Before Judge Park. Mitchell superior court. April 20, 1909.

An execution issued in December, 1896, against W. W. Taylor, was levied upon 125 acres of land, the south half of lot 55 in the 10th district of Mitchell county, the entry of levy reciting that he was in possession of it. A claim was interposed by his wife. At the trial the levying officer testified: "The recital on that entry is correct. That levy was made on March 7, 1902. I testify from that entry. I would not say from my recollection who was in possession at the time the levy was made. I· testify from the record. I do not remember going out there and making the levy. I only remember where defendant was. I do not remember asking him to point out the property, and that he replied that he had no property. I suppose that he and his wife were living together at the time. I do not know that he was living on the property in question. From my recollection I could not identify the particular property on which the levy was made. I only know where I saw him; where he was working. I would not state positively that the land I levied on was lot 55 in the 10th district. I do not know whether the lot I levied on was in the possession of either Mr. Taylor or his wife. The record is all I have to go by. I levied on the land that was

known as the W. W. Taylor place. It was my understanding that I levied on the land that he was working on the day I went out there. I made the record according to what he gave me, and told him I had a paper against him, and to point out something for me to levy on. I will not swear that he did point out that land to me. The record is all I go by. I levied on the Taylor place, where Will Taylor was living. I went to the field where he was working. I do not know whether the house he lived at was on that particular place or not." The court ruled that this testimony, with the execution and entry of levy, made such a prima facie case as to shift the burden of proof.

The claimant introduced a deed dated December 25, 1899, conveying the land in dispute to her, executed by the Hand Trading Co., by J. L. Hand, president, without corporate seal. The court ruled that this alone was not sufficient to rebut the presumption arising from proof of possession in the defendant in execution. One Maples then testified: "Mr. Hand was in possession of this tract of land before the claimant went into possession. I do not know what connection Mr. Hand has with the Hand Trading Co. I could not say that he is president. My understanding is that this lot belonged to Mr. Hand individually, and not to the Hand Trading Co. It is my understanding that the claimant in this case bought this land. Mr. Hand himself was in possession, and it was evidenced by turpentine operations several years prior. There was no clearing, residence, or fencing on it."

W. W. Taylor testified: "My wife is in possession of the land levied on. We moved there on January 16, 1896. I went there with her. She went into possession before the judgment was obtained, and has since then been in continuous possession of the land. I have never claimed title to it. She bargained for the entire lot, and paid for the south half by money arising from the sale of the north half. The original trade was hers; it was not mine. I did not have anything to do with it. I made it as agent for her. In 1890 I sold my place on the river, and had $400 worth of notes on J. L. Hand and Mr. Pelham, which I gave to her in the fall of 1890. I had no money. I had spent all of hers. I have owned nothing since. She had nothing personally to do with the trade. I acted as her agent, and made the trade with Mr. Hand. She and I went to the place together after it was bargained for. I

consulted with her about this trade, but did not submit it to her for ratification. I suppose it was my judgment that made the trade. We went there and inspected it together. She saw the lot before we traded. I think it was in 1892 or 1893 that I bargained for the land. I paid nothing on it in cash. I sold the turpentine privilege for $100, and paid that on the purchase-price; afterwards sold the north half, and got money enough to pay the balance. I think I signed a note that was given for the first bond for title. My best recollection is that my wife signed it, but would not be positive. I do not know whether the bond was conditioned to make title to her or to me. Of course it was not conditioned to make title to me; the title was not coming to me."

On motion the court ruled out the deed, on the grounds that it was not by evidence connected with prior possession in the grantor, and that it did not appear to have been properly executed; and then directed a verdict finding the property subject to the execution. The claimant excepted to each of the rulings stated.

Counsel cited, on possession and title:  Civil Code, § 4624; *Southern Mining Co.* v. *Brown,* 107 *Ga.* 264; *Dean* v. *American Harrow Co.,* 112 *Ga.* 155; *Clements* v. *Stubbs,* 106 *Ga.* 448; *Coleman* v. *Rice,* 105 *Ga.* 164; *Rountree* v. *Gaulden,* 123 *Ga.* 452; *Rowland* v. *Gregg,* 122 *Ga.* 821; *Richardson* v. *Subers,* 82 *Ga.* 428; *Crawford* v. *Kimbrough,* 76 *Ga.* 427; *Broome* v. *Davis,* 87 *Ga.* 587; *City of Atlanta* v. *Word,* 78 *Ga.* 276; *Garrard* v. *Hull,* 92 *Ga.* 702; *Neal* v. *Perkerson,* 61 *Ga.* 346. On execution of deed of corporation:  *Butts* v. *Cuthbertson,* 6 *Ga.* 166; *Dodge* v. *American &c. Co.,* 109 *Ga.* 396.

*Cox & Peacock* and *H. C. Dasher Jr.,* for plaintiff in error.

*Pope & Bennet,* contra.