## AUGUSTA LAND COMPANY *v.* AUGUSTA RAILWAY AND ELECTRIC COMPANY.

1. Where a written agreement was entered into between two corporations, whereby one was to execute a deed to the other upon certain conditions, and subsequently a deed in fee simple to the land referred to in the agreement was executed, reciting in the preamble thereof that whereas by agreement between the parties the grantor agreed to convey to the grantee certain land on "certain conditions which have since been complied with," but the habendum clause of the deed contained no such conditions, the conditions of the agreement were merged in the conveyance, and the grantee in the deed held the land freed from the conditions contained in the agreement.
2. Where a deed purports on its face to convey certain land from one corporation, as grantor, to another, and the corporate name is signed to the deed by the president thereof, with the corporate seal attached, the presumption is that the official or executive officer was authorized to execute the conveyance on behalf of the corporation.
3. It follows that a petition disclosing the facts set out in the preceding notes, seeking to recover the land on the ground of a breach of the condition subsequent contained in the agreement, filed by the grantor against the holder of the land under the deed, is subject to general demurrer.

AUGUST 14, 1913.

Complaint for land. Before Judge Hammond. Richmond superior court. July 19, 1912.

The Augusta Land Company brought suit against the Augusta Railway & Electric Company and the Augusta-Aiken Railway & Electric Corporation, to recover ten acres of land known as "Lake View Park," with mesne profits. No equitable relief was prayed. The case came on to be heard before the court upon a general and special demurrer to the petition. The court below sustained the demurrer generally, and dismissed the suit. To this judgment the plaintiff excepted. The petition alleges, substantially: The Augusta Railway & Electric Company and the Augusta-Aiken Railway & Electric Corporation (as the successor in title of the Augusta Railway & Electric Company) have been in possession of the land since July 17, 1896. On June 29, 1900, the Augusta Land Company executed to the Augusta Railway & Electric Company a warranty deed conveying the ten acres in controversy, in fee simple, without any condition or restriction. An agreement was entered into on August 3d, 1895, between these two companies, whereby the railway company agreed to "build, equip, and operate an electric line of street-cars from its then terminus,

in Harrisburg, out Broad street to High street, thence on High street to Greene street, thence on Greene street to either Milledge street or Crawford avenue, at the election of your petitioner, to Broad street, where it should connect with the street-car line thus extended. . . That cars should be operated on said line (thus to be constructed) at intervals not exceeding 30 minutes, unless prevented by strikes, breakdowns, or unavoidable accidents." It was agreed between the parties that upon completion of the work and commencement of the operation of the cars the plaintiff would convey the ten acres of land now in controversy. The agreement also provided that "The conditions in said deed shall be as follows: The said tract of ten acres shall be conveyed to the party of the second part to be used as a public park for white persons only, and to this end the party of the second part may improve said land in any manner it sees fit by buildings, landscape gardening, etc., and shall have full and entire control over the land and all improvements. The party of the second part shall pay all taxes and assessments of whatever kind upon said property, payable after the delivery of the deed, and shall remain in full control thereof so long as it continues to use and operate the said line of cars as heretofore agreed, or until it ceases to use said tract for the purposes of a public park; in either of which events said land shall at once revert to the party of the first part, and all possession and control of the party of the second part shall cease at once, except that it shall have the right and privilege of entering the same within one year of such reversion for the purpose of removing any building which it may have erected while in possession—such removals to be without injury to the land, and the land to be left in as good condition as when first entered by the party of the second part." The deed did not contain any of the conditions, but was a warranty, fee-simple deed, without condition. The deed does contain, however, the following reference to the agreement: "Whereas by agreement between the Augusta Land Company and the Augusta Railway Company, dated August 3, 1895, recorded in the office of the clerk of the superior court of said county, in Book YYYY, folio 552, the Augusta Land Company agreed, upon certain conditions which have since been complied with, to convey to the said Augusta Railway Company certain land in said agreement described; and whereas, by deed dated March 21st, 1896, recorded in said office in

Book YYYY, folio 494, the said Augusta Railway Company transferred to Samuel M. Jarvis and Roland R. Conklin, all its right, title, and interest in and to all the property mentioned in said agreement; and whereas all the interest, right, and title of said Samuel M. Jarvis and Roland R. Conklin in and to all the ten lots mentioned in said agreement were duly transferred by Samuel M. Jarvis and Roland R. Conklin to D. B. Dyer, by instrument dated July 23rd, 1896, and recorded in said office in Book ———, folio ————; and whereas, to confirm and carry out said agreement, the Augusta Land Co. issued a deed conveying the same ten lots to D. B. Dyer, dated February 4th, 1899, recorded in Book 5 M's, folio 343; and whereas all the rights, title, and interest of Samuel M. Jarvis and Roland R. Conklin in and to the ten acres of land mentioned in said agreement was duly transferred by said Samuel M. Jarvis and Roland R. Conklin to the Augusta Railway & Electric Co., by instrument dated July 23rd, 1896, and recorded in said office in Book 5 A's, folio 305; and whereas it is necessary for the said Augusta Land Co. to issue a deed to the said Augusta Railway & Electric Co. to confirm and perfect the title as aforesaid. Now, therefore, this indenture made this 29th day of June, 1900, between the Augusta Land Company, a corporation of said county and State, as party of the first part, and the Augusta Railway & Electric Company, of said county and State, party of the second part," etc. It is alleged in the petition, that the railway company constructed the lines as agreed upon, and operated them until the spring of 1902, when, after the deeds had been executed, the railway company tore up the rails and cross-ties, etc., which had been built under the contract of August 3d, 1895, and ceased and abandoned the operation of street-cars along the line of the streets as stipulated, and no other railroad tracks have been placed or located on the streets, and no cars have been operated at intervals of thirty minutes, or otherwise; that on May 24, 1911, the Augusta Railway & Electric Company entered into a written agreement with the Augusta-Aiken Railway & Electric Corporation, whereby it sold and conveyed to the latter company all of its railroad property, and all of its other property, including the ten acres of land in controversy; that the property was conveyed subject to all valid liens, debts, obligations, and liabilities of the Augusta Railway & Electric Company of every kind; that the tearing up of

the tracks, and the discontinuance of the operation of cars, was a breach of the conditions subsequent which under the agreement of 1895 were to be incorporated in the deed, and the failure to do so was a fraud on the part of the defendant against the plaintiff, and by reason of the breach of the conditions in the agreement the land reverted to the plaintiff by the terms of the agreement.

The grounds of demurrer were, that the petition does not set forth a cause of action; and that it appears on the face of the petition and exhibits attached thereto that the defendant and its predecessor in title have been in adverse possession of the land sued for, under written evidence of title, for over seven years.

*E. H. Callaway,* for plaintiff. *Boykin Wright,* for defendant.

HILL, J. (After stating the foregoing facts.)

1. The controlling question to be determined is whether the agreement of August 3, 1895, was merged in the deed of June 29, 1900, and became functus officio when the deed was executed, and the rights of the parties are based alone upon the deed. Mr. Devlin, in his work on Real Estate, says: "The rule applicable to all contracts, that prior stipulations are merged in the final and formal contract executed by the parties, applies, of course, to a deed based upon a contract to convey. When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties." 2 Devlin on Real Estate, § 850a. In the case of Slocum *v.* Bracy, 55 Minn. 249 (56 N. W. 826, 43 Am. St. R. 499, 500), Mitchell, J., said: "No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely on the deed." The deed of June 29, 1900, purports to be the consummation of the agreement of August 3d, 1895, and to convey the absolute title to the ten acres of land in dispute, and the only reference to any conditions of the agreement is to "certain conditions which have since been complied with." The deed then conveys the fee-simple title to the land in dispute, without reference to any forfeiture or reversion. There is no recital in the deed that it is to be subject to whatever conditions the agreement provided should be incorporated in the deed. "After the

execution of the deed, the grantee can not, in the absence of actual fraud, recover for any misrepresentations relating to the title, not covered by the covenants of the deed, as the deed is considered to be a complete relinquishment of all conflicting claims in the preceding contract of sale." 2 Devlin on Real Estate, § 850a. In the case of Dunbar *v.* Aldrich, 79 Miss. 698 (31 So. 341), where a deed recited that it was the purpose of the grantor to give a life-estate to the grantee, with remainder in fee to his children, but in the granting part of the deed a conveyance was made to the grantee and his heirs in fee simple, it was held that the granting part of the deed controlled, and the grantee took an estate in fee simple. The court, speaking through Terral, J., said: "And especially is it a rule of interpretation of a deed that an intention manifested in the recitals of a conveyance will be controlled by the terms of the granting part of the deed." Where there is a discrepancy between the recitals and the operative part of a deed, the operative part, if clear and unambiguous, must be followed. Elphinstone on the Interpretation of Deeds, \*129. In St. Phillips Church *v.* Zion Church, 23 S. C. 297, the plaintiff had a lease on certain land for 99 years, perpetually renewable, to be used for the purposes of a Presbyterian church, reserving the right to re-enter in case the land was used for any other purpose whatever than the erection of a Presbyterian church. The lessee assigned the lease to the Glebe Street Presbyterian Church. Afterwards this corporation contracted to sell the land to certain trustees of the African Methodist Episcopal Church, and to execute a conveyance thereof on the payment of the purchase-money; and in pursuance of this contract the trustees were put into possession. The plaintiff commenced suit to recover the premises, or to enjoin the defendant from executing a conveyance to the A. M. E. Church contrary to the conditions upon which the defendants held the property. It was held that the lease was merged in the conveyance, and that the grantees held the property freed from the conditions in the lease. The court said: "The recital does not qualify the deed in any particular. Its office was only to trace the history of the transaction and to describe the relation of the parties in regard to the property and to each other, leading up to the grant, which was absolute in its terms. Deeds are to be taken most strongly against the grantors; and if the form of the conveyance is absolute, as here, nothing is to be

taken as intended that is not plainly expressed in the deed." In Cullen *v.* Sprigg, 83 Cal. 56 (23 Pac. 222), the trustees of a city adopted a resolution providing that certain lands should be granted upon the condition that the lands should be occupied and improved within six months from the date of the certificate; and if within a year therefrom improvements of a certain amount were not made, the lands should revert to the city. The deed to the defendant's grantor recited a sale made to him that day on the conditions of the resolution, and an agreement on his part to make the improvements, but these recitals preceded the granting clause, which together with the habendum, in consideration of the full receipt of the purchase-money by the city, purported to vest in the grantee the full title of the city in fee simple, without condition. It was held that the grant was absolute. The court said (p. 225) : "It is true that in the deeds to Evans, which were made on the day of the sale, there is a recital of a sale upon the conditions prescribed in the resolution, and also of an agreement by Evans to complete all improvements required by them; but the granting part and habendum of the deed, in consideration of the full receipt of the purchase-money by the city, purports to vest in the grantee the full title of the city, in fee simple absolute, without condition precedent or subsequent. To create a condition in a grant, apt and appropriate words must be appended to the grant, which ex vi termini import that the vesting or continuance of the estate is to depend upon the condition. Craig *v.* Wells, 11 N. Y. 320 ; Jackson *v.* McCallen, 8 Cow. 296. An estate upon condition can not be created by deed, except when the terms of the grant will admit of no other reasonable interpretation." In Webb *v.* Webb's Heirs, 29 Ala. 588, 606, the court said: "The granting clause determines the interest intended to be conveyed, and prevails over the introductory statement. Kershaw *v.* Boykin, 1 Brevard (S. C.), 301. This is not intended to disturb the well-settled rule, that if two clauses in a deed are so repugnant that they can not stand together, the first prevails over the last." See Dickson *v.* Wildman, 183 Fed. 398 (105 C. C. A. 618). It is well settled that a deed will not be construed to create an estate upon condition, unless the language of the deed, according to the rules of law, or proprio vigore, imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. *Thompson*

v. *Hart,* 133 *Ga.* 540, 543 (66 S. E. 270) ; 2 Devlin on Deeds, § 848. In *Nelson* v. *Atlanta &c. Ry. Co.,* 135 *Ga.* 572 (69 S. E. 1118), it was held: "A railroad company made to an owner of land lying near tracks used by it a written proposition to purchase a strip of such land 'on the following terms, covenants, and conditions,' setting out that the strip was to be used, in connection with other property, in a general plan for railroad terminals, and agreements as to erecting a wall, moving a public street, not using certain land for stated purposes, etc. It provided: 'the covenants and agreements herein stated to be incorporated in the deed to said property, so as to run with the land sold.' The proposition was accepted in writing. Later the purchaser assigned its rights to another company, and the seller, on receipt of the purchase-price, made to such assignee a deed in which were included the covenants and agreements of the contract. *Held,* that the contract was merged into the deed, and could not thereafter be enforced against the original purchaser as containing personal covenants." From the authorities we conclude that the agreement of August 3d, 1895, was merged in the deed of June 29th, 1900, and became functus officio when the deed was executed; and the rights of the parties are based alone upon the deed.

2. But it is insisted that the president of the Augusta Land Company was not authorized, without corporate action on the part of the land company, to execute the deed. The petition alleges that on June 29, 1900, "the then president of your petitioner, in the name of your petitioner, executed to said Augusta Railway and Electric Company a deed conveying the said ten acres of land," etc. A copy of the deed is attached, and it is recited in the deed that the party of the first part (Augusta Land Company) "has caused its corporate seal to be affixed hereto." In Powell on Actions for Land, 273, 274, § 221, the author says: "Wherever a deed purports to have been executed on behalf of a corporation by an official or executive agent of the company, and the corporate seal is affixed, the presumption is that the official or executive agent was authorized to execute the conveyance on behalf of the corporation." To the same effect, see *Carr* v. *Ga. Loan &c. Co.,* 108 *Ga.* 757 (33 S. E. 190) ; *Nelson* v. *Spence,* 129 *Ga.* 35, (5) 36 (58 S. E. 697) ; *Taylor* v. *Hartsfield,* 134 *Ga.* 479 (68 S. E. 70). There was no effort on the part of the Augusta Land Company to

repudiate the act of its president in signing the deed, so far as the record discloses; and the rule is that if the principal has notice of an unauthorized act of another in his behalf, he must repudiate the act within a reasonable time, or he will be deemed to have ratified it. Mechem on Agency, § 153, et seq.; 31 Cyc. 1275; *Whitley* v. *James,* 121 *Ga.* 521 (49 S. E. 600). And the above rule applies to a case where the principal is a corporation, as well as to a case where the principal is an individual. Gold Mining Co. *v.* National Bank, 96 U. S. 640 (24 L. ed. 648); Mechem on Agency, § 158; 2 Thompson on Corp. (2d ed.) § 2019. The plaintiff allowed the defendant's predecessor to construct tracks and operate cars through the property, and to remain in possession of the property in dispute for a number of years, without any effort to repudiate the act of the plaintiff's agent in executing the deed, until the commencement of this suit, and received whatever benefits accrued to it by reason of the building and operation of the car lines as set out in the petition. The petition alleges no facts which would excuse the plaintiff for a failure to bring suit earlier. There is no explanation as to why the plaintiff did not know, or could not have known by the exercise of ordinary care, that the deed had been executed. With the deed signed by the president of the company outstanding, and with the defendant company building a line of railroad on and through the property of the plaintiff, it is hardly conceivable that the plaintiff did not know of the existence of the deed and how it was signed. If the plaintiff had knowledge of the execution of the deed, and took no steps to repudiate it, although the defendant was in possession under it, it is bound by it; if it had no knowledge of the execution of it at the time, but since its execution it has by its acts ratified the execution of the deed, it is bound by its terms. The deed was absolute on its face, and no conditions in the agreement were incorporated in the deed; and this being true, there could be no right of reverter in a case of this kind. Whatever conditions were embraced in the agreement were merged in the absolute deed, which contained no conditions. It follows from what has been said, and from the authorities cited, that the defendant has a good title to the premises in dispute; and the court below did not err in sustaining the demurrer to the petition.          *Judgment affirmed. All the Justices concur.*