**FIRST DIVISION**
**ELLINGTON, C. J.,**
**ADAMS AND DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0203. TALLAHASSEE STATE BANK v. MACON et al.          JE-010

ELLINGTON, Judge.

Tallahassee State Bank ("TSB") appeals from the order of the Superior Court of Henry County, which granted a partial summary judgment in favor of plaintiff landowners Edwin and Norma Macon in this suit to cancel or to modify a security deed.[1] TSB also challenges the court's order denying its motion for summary judgment. This suit concerns, in part, the relative priority of security interests in a parcel of real property held by the Macons, who sold the parcel to a developer, and by TSB, which extended a construction loan to the developer. After a hearing, the trial court determined that TSB's security interest is superior to the Macons' security

---

[1] The Macons also sued real estate developers Land, LLC, and Crystal Lake Estates, LLC. The Macons asserted claims for declaratory judgment, unjust enrichment, fraud, breach of duty of good faith and fair dealing, and slander of title.

interest, but only to the extent that the developer actually used the proceeds of TSB's construction loan to develop the property. Based on this determination, the trial court granted the Macons' motion for partial summary judgment on their petition for a declaratory judgment. The trial court then determined the amount of TSB's first priority interest to be $37,989.86 and entered judgment, ordering TSB to quitclaim its interest in the property to the Macons upon receipt of that amount from them. TSB appeals from those orders, contending that the trial court erred in limiting its first priority interest and in denying its motion for summary judgment as to the Macons' remaining claims. For the reasons explained below, we reverse in part, as to the trial court's priority determination.

1. To prevail at summary judgment under OCGA § 9-11-56,

the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. Our review of the grant of

2

summary judgment is de novo, and we construe the evidence and all inferences therefrom in favor of the nonmoving party.

(Citations and punctuation omitted.) *Henson v. Georgia-Pacific Corp.*, 289 Ga. App. 777, 777-778 (658 SE2d 391) (2008). This standard also applies to our review of orders denying summary judgment. (Citation omitted.) *Ledford v. Smith*, 274 Ga. App. 714, 715 (618 SE2d 627) (2005). So viewed, the undisputed facts pertinent to the priority issue are as follows.

The Macons owned about 130 acres of Henry County farm land located at 3262 Jonesboro Road. In 2005, the Macons were approached by real estate developer James Heidenreich, a principal in Land, LLC, ("Land") and he asked them to sell their property to his company for a subdivision development. On June 2, 2005, the Macons entered into an agreement to sell 130 acres to Land for approximately $6.8 million. Except for an initial non-refundable down payment of approximately $64,000 paid by Land to the Macons on June 2, 2005, the balance was to be paid off on a "release basis" as the property was developed into individual lots and sold.[2] The Macons understood that Land would need to obtain a construction loan to develop the property.

---

[2] The per lot release amount was later set at $107,788.71.

3

In its "other provisions" clause, the sales agreement provided that, if the full sales price was not paid by maturity, the Macons had the right to "take back the property and retain all payments[.]" However, in that same clause, the Macons agreed "to subordinate [the] property to the construction loan so that buyer may develop and sell the property." The agreement provided that Land could assign its interest in the property. It did not contain a clause providing that any of the conditions or stipulations of the agreement that were not fulfilled at the time of closing would survive the closing.

Heidenreich also negotiated with the Macons' neighbor, Debra Law, to purchase her property, and, like the Macons, Law originally agreed to accept a small down payment and to be paid for her property on a per lot release basis as the homes sold. Before closing, however, Law successfully negotiated an up-front cash payment of $1,308,550.

After executing the purchase and sales agreements, Land transferred its interest in both agreements to Crystal Lake Estates, LLC ("Crystal Lake"), an entity owned and managed by the same principals as Land. As part of its plan to develop the Macon tract and the Law tract into one residential subdivision, Crystal Lake obtained a loan

from TSB in the amount of $2,896,800, funds it used to finance the development of the subdivision and to pay Law the balance of the sales price on her tract.

TSB's attorney prepared the closing documents, dating them all March 10, 2006, and the parties conducted a "mail-away closing," in which the parties executed the documents, returned them to TSB, and then received copies of the final, executed documents later. The Macons executed a warranty deed in favor of Crystal Lake which contained no limitations and did not refer to the sales agreement or the subordination provision. Crystal Lake executed a promissory note in favor of the Macons in the amount of $6,575,111.57. The note states that it "is secured by a mortgage on real estate of even date herewith." In addition, Crystal Lake executed two security deeds, one in favor of the Macons ("the Macons' security deed") and one in favor of TSB ("TSB's security deed"). TSB's security deed listed as collateral for its loan both the Macon tract and the Law tract. The Macons' security deed provided: "[The Macons] acknowledge[ ] and agree[ ] that this lien is inferior and subordinate to the lien [Crystal Lake] has executed of even date herewith in favor of [TSB], for the acquisition and development of the property."

On May 9, 2006, TSB's attorney recorded the deeds in the following order, Crystal Lake's warranty deed first, TSB's security deed second, and the Macons'

5

security deed last. According to the Macons, they did not see either of the security deeds until months after the deeds were recorded, and they never executed the security deed that secured their interest or otherwise agreed to having their interest subordinate to a "construction loan" that was used for property acquisition, rather than for construction.

Because of unfavorable changes in the housing market, development of the Macon tract was not completed. As of May 13, 2009, Crystal Lake's indebtedness to TSB was $1,869,344.47.

On March 10, 2008, the Macons sued TSB, Land, and Crystal Lake. The complaint, as amended, included counts for cancellation and reformation of the deed, declaratory judgment, breach of contract, fraud, unjust enrichment, prejudgment interest, attorney fees, and other damages. The parties filed cross-motions for summary judgment. The Macons moved for summary judgment only as to their request for declaratory judgment. That count of the complaint sought a declaration that the Macons' security interest is superior to TSB's or, in the alternative, that the Macons' security interest is only subordinate to TSB's to the extent that any loan proceeds were used to develop the Macon tract. TSB moved for summary judgment as to all counts in the Macons' complaint.

6

Following a hearing, the trial court denied TSB's motion for summary judgment and granted the Macons' motion. The court reasoned that "[b]ecause the [Macons] never contracted to subordinate their interest in the property for any purpose other than the development of the property they conveyed to Crystal Lake, [TSB] can not take a security interest in the property for funds used to acquire [the Law] property. [TSB] could only acquire that interest which [Crystal Lake] had to give to [TSB]." The court concluded that, because the Macons "only agreed to subordinate their security interest to a construction loan used for their development of the property, [Crystal Lake] could not give a greater interest to [TSB] than [it] had to convey." The court concluded, therefore, that the Macons' interest was subordinate to TSB's, but only to the extent that the construction loan from TSB to Crystal Lake was used to develop the Macon tract, which the court determined to be $37,989.86. Based upon this priority analysis, the court ordered TSB to quitclaim the Macon tract to the Macons upon receipt of a payment from them in the amount of $37,989.86.

(a) TSB contends that the trial court's finding with respect to the priority of the deeds to secure debt was erroneous. TSB argues that, because the subordination clause in the Macons' real estate sales agreement merged into the Macons' security deed, the clause was not enforceable because it had been extinguished. We agree.

7

"[W]hen a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed." *Augusta Land Co. v. Augusta R. &c. Co.*, 140 Ga. 519, 522 (79 SE 138) (1913). "The rational basis for the merger rule is that[,] where parties enter into a final contract[,] all prior negotiations, understandings, and agreements 'on the same subject' are merged into the final contract, and are accordingly extinguished." (Citation and emphasis omitted.) *Holmes v. Worthey*, 159 Ga. App. 262, 267 (282 SE2d 919) (1981), aff'd, 249 Ga. 104 (287 SE2d 9) (1982). As the Supreme Court of Georgia has explained, Georgia's appellate courts

> have followed the general rule that antecedent sales contracts covering the purchase and sale of real property merge in a subsequent deed involving the same property. Thus, where in a contract for sale of land the parties execute a preliminary sales contract and subsequently reduce that contract to a finality evidenced by a deed to secure debt, the terms of the preliminary contract, where not otherwise reserved, are merged into the deed, and those terms, conditions or recitals contained in the preliminary sales contract which are not included in the deed are considered as eliminated, abandoned or discarded.

(Citations omitted.) *Jordan v. Flynt*, 240 Ga. 359, 362 (1) (240 SE2d 858) (1977).

The only exception to the merger doctrine "in the sale of realty is that [,]where the antecedent contract contains provisions imposing obligations upon the vendor

8

other than those relating to title or possession, and collateral thereto[,] such collateral provisions will be held to survive the deed." (Citations, punctuation, and emphasis omitted.) *Holmes v. Worthey*, 159 Ga. App. at 266-267. For example, where a single "sales" contract provides for the conveyance of land *and* for the construction of a house by the seller, such a "dual-purpose" contract comprises two distinct agreements. Id. Thus, "the 'build' provisions of [a] build-sale contract[ ] are not performed by delivery and acceptance of [a] warranty deed, and therefore . . . the doctrine of merger by deed is no bar to claims by a purchaser-homeowner against his builder-seller seeking recovery for latent construction defects[.]" *Worthey v. Holmes*, 249 Ga. 104, 105 (1) (287 SE2d 9) (1982). See also *Hudgins v. Bacon*, 171 Ga. App. 856, 861 (2) (321 SE2d 359) (1984) (accord).

In contrast, the Macons argue in this case that the antecedent real estate sales agreement contained provisions imposing obligations, not upon the vendor, but upon the *buyer* in how it could apply the proceeds of a loan obtained from a third party. The subordination clause at issue, however, constitutes a promise by the Macons only. The clause allowed Land to use the property as collateral for a construction loan; however, it imposed no obligation on it to use the loan funds that it obtained in any specific way. In fact, it is apparent from the real estate sales agreement that Land did not

actually promise to develop the property nor did it promise to obtain a loan; rather, it only promised to pay the Macons the agreed purchase price on a release basis as it developed and sold the property. Because the agreement imposed no obligation on Land or Crystal Lake to perform after closing as the Macons argue, there was no collateral agreement that survived merger. Cf. *C & G Candler v. Ga. Power Co.*, 138 Ga. App. 279, 280 (226 SE2d 87) (1976) (because obligations remained to be performed by the parties after closing, the collateral agreement did not merge).

Because the terms of the subordination clause do not come within the limited exception to the merger doctrine, and because the parties failed to include the terms of the purchase agreement in the security deed, those terms must be considered as "eliminated, abandoned or discarded." *Jordan v. Flynt*, 240 Ga. at 362 (1).

(b) Because the court was not authorized to rely on the subordination language in the sales agreement, it was required to determine the priority of the deeds pursuant to OCGA § 44-14-323, which provides that "[a]ll liens which are not regulated and fixed as to rank by this title shall rank according to date, the oldest having priority." As we have explained, that Code section, which deals with mortgages, conveyances to secure debt, and non-tax liens, established a "first in time, first in right" approach "to rank competing but otherwise equally ranked liens." (Citations and punctuation

10

omitted.) *Vesta Holdings I v. Tax Commr. of Fulton County*, 259 Ga. App. 717, 720 (2) (b) (578 SE2d 293) (2003). The Macons' security deed expressly states that it is inferior to TSB's security deed. And, even if the Macons' security deed did not state that it was inferior, the fact that it was recorded after TSB's security deed results in it being the inferior deed.

Because the superior court erred in granting summary judgment to the Macons on their claim for declaratory judgment, that portion of the court's order must be reversed.

2. TSB also states that, "[w]ith priority established," the Macons' remaining claims "fail as a matter of law because they all require a finding that TSB did not have priority." Because this contention is not accompanied argument or citation to authority, however, we must deem it abandoned. Court of Appeals Rule 25 (c) (2); *Hosseini v. Donino*, 222 Ga. App. 697 (1) (475 SE2d 665) (1996).

We note that the Macons asserted claims against TSB for fraud, unjust enrichment, and slander of title. TSB challenged these claims below in its motion for summary judgment. In it's order, however, the superior court granted judgment to the Macons solely on the basis of deed priority. The court denied TSB's motion for summary judgment as to the Macon's remaining claims without explaining its

rationale. We note that nothing in this opinion precludes TSB from challenging these claims in a renewed motion for summary judgment once the case is remanded to the trial court. See, e.g., *Southeastern Metal Products v. Horger*, 166 Ga. App. 205, 206 (1) (303 SE2d 536) (1983) (a party's renewed or second motion for summary judgment on the same issue may be considered, even if no new evidence has been introduced since the denial of the first motion for summary judgment).

3. TSB contends the trial court erred in calculating the amount of development costs by which the Macons' security interest is subordinate to that of TSB and by ordering TSB to quitclaim the property to the Macons. Because we have reversed the trial court's order granting the Macons' motion for partial summary judgment concerning the relative priority of the parties' security deeds, this claim of error is moot. Nevertheless, the portion of court's order directing TSB to quitclaim the property to the Macons upon their payment of $37,989.86 must be vacated.

*Judgment affirmed in part, reversed in part, and vacated in part. Adams and Dillard,J J., concur.*