## WOODWARD *v.* MILLER *et al.,* and *vice versa.*

1. The manufacturer of a buggy, who sells it to a municipal corporation for the use of one of its employees, representing it to be strong and in good condition, but knowing that it is in fact defective, the defect being so concealed by the use of paint and grease that the purchaser can not detect it, is liable in damages to the person whose use of the buggy was contemplated at the time of the sale, for injuries caused by such defect; and this is so notwithstanding there was no privity of 'contract between the plaintiff and the defendant in the sale of the buggy.
2. The amendments which were allowed merely amplified the original petition, and were not open to the objection that they set out a new cause of action.

Argued February 19,—Decided March 3, 1904.

Action for damages.   Before Judge Reid.   City court of Atlanta.   March 18, 1903.

*Arnold & Arnold* and *Howell C. Erwin* for plaintiff.
*W. H. Terrell* and *Black & Jackson,* for defendants.

CANDLER, J.   The main bill of exceptions assigns error upon the sustaining of a general demurrer to the plaintiff's petition. The defendant filed a cross-bill complaining of the allowance of an amendment to the petition.   The case made by the declaration was, in substance, as follows :   The plaintiff is superintendent of the waterworks department of the City of Atlanta, and in the performance of his duties has occasion to ride between different points in the city.   The defendants are manufacturers and sellers of buggies, carriages, and other vehicles.   On July 30, 1901, the plaintiff, in behalf of the City of Atlanta, bought of the defendants a buggy for his use, the defendants at the time representing to him that the buggy was in good condition, extra strong, and fitted for the service for which it was intended.   After purchasing the buggy the plaintiff began to use it, and on or about November 12, 1901, while riding in it on the streets of Atlanta, "the spindle extending from the right front axle broke, the buggy was wrecked and turned over, causing the horse to run away, and plaintiff was thrown about and around and on the belgian-block pavement, and greatly and permanently injured."   The defendants were lacking in ordinary care in the manufacture, inspection, sale, and handling of the buggy.   An ordinary test would have led to the discovery of the defect which caused the spindle to break.   "There was a large crack in said axle, but the defendants had caused and di-

rected the same to be covered with grease and the crack filled in. This crack extended through the larger part of the spindle, and so weakened the same that the weight of the buggy caused the same to break.     The crack was visible to the defendants, in the exercise of ordinary care, before they placed the grease upon the spindle ; and had the defendants exercised ordinary care in sounding and testing the buggy in any way, they would have discovered the break or crack." On account of the crack being filled and covered with grease, the plaintiff could not, in the exercise of ordinary care, discover its existence, and was unaware of it.     The defendants falsely represented to the plaintiff that the buggy was in good condition, knowing at the time that the representation was false.     The plaintiff's injuries were described, and were alleged to be permanent. Two amendments to the petition were offered, and were allowed over the defendants' objection.     The first alleged that the spindle which broke was made of " defective, cheap, imperfect, and improperly welded iron and steel, . . and flaws and incipient cracks were present in it." The second set up that at the time of his injuries the plaintiff was in the discharge of his duties as superintendent of the waterworks system of Atlanta; that the defendants, who reside in Atlanta, knew at and prior to the time the buggy was sold that it was to be used by the plaintiff in the discharge of his duties, and sold the buggy expressly for such use; and that the plaintiff was injured by being thrown out into the street by the giving way and breaking of the axle, which caused the buggy to drop to the ground.     " He was not hurt by the horse running away.     The horse ran away after the buggy fell, and after plaintiff was injured."

1. We do not hesitate to hold that the petition set out a cause of action.     Independently of the question of liability to the plaintiff on the alleged warranty of the buggy, we are clear that, under the allegations, the defendants were guilty of a tort for which the plaintiff could hold them liable.     The gist of the action is the alleged false representation, knowingly made, as to the quality and condition of the buggy.     In this it is very similar to an action of deceit.     It makes no difference that there was no privity of contract between the parties.     It appears that the plaintiff's injuries were sustained while the buggy was being put to a use expressly contemplated by the parties when the sale was made.     " A

particular transaction may sometimes be looked upon as affording the right to bring an action either for the breach of contract or in tort. Take, for instance, the too familiar case of a railway disaster caused by the company's negligence: the company are liable to the passenger, in contract, because they gave him a ticket, and in tort, because they were not sufficiently careful in carrying him. In such a case as this there is clearly direct privity between the plaintiff and the defendants. But, generally speaking, privity is not necessary to support an action in tort. . . If a railway company contract with a master to carry his servant, and in doing so are guilty of negligence, which causes bodily hurt to the servant and consequent damage by loss of service to the master, the company may be sued in contract by the master and in tort by the servant." Note to Landridge *v.* Levy (4 M. & W. 337), Shirley, L. C. 346. In that case, which is closely in point in the present discussion, a father bought from a gunsmith a gun, which was warranted, telling the gunsmith at the time of the purchase that he wanted the gun for the use of himself and his sons. The gun, while being used by one of the sons, exploded, injuring him, and suit was brought by him against the seller of the gun for the tort. The defendant contended that the right of action, if any, was in the father, to whom the sale had been made; but it was held that the suit in tort could be maintained by the son. In the able and exhaustive brief of counsel for the plaintiff a large number of cases of similar import are cited; but for the purposes of the present discussion we deem it necessary to refer to only a few of those most closely in point. In Lewis *v.* Terry (Cal.), 31 L. R. A. 220, it was held that "One who sells a folding bed, representing it to be safe for use when he knows it to be dangerous, is liable for injuries caused by the defects in the bed to any person who uses it, although there may be no privity of contract between them." That decision was based on the principle that the defendant was guilty of a wrong independently of his contract, viz., his false representation as to the safety of the bed, and that thereby the case was brought within the operation of the law of torts. In Shubert *v.* Clark (Minn.), 15 L. R. A. 818, the plaintiff was a painter in the employment of a contractor. The contractor ordered of a retail merchant a step-ladder for the use of the plaintiff. The merchant, not having such a ladder in his stock, ordered the defendant,

a manufacturer, to deliver one to the place designated by the contractor.     The ladder so delivered was made of defective and inferior material, and was dangerous, but its defects were hidden from view by paint, varnish, and oil.     By reason of its weakness the plaintiff fell from it and was injured.     The court held the defendant "liable for injuries caused by such negligence to one into whose hands the dangerous implement comes for use in the usual course of business, even though there be no contract relation between the latter and the manufacturer."

We have been able to find in own reports only one case at all in point in the present discussion.     In *Blood Balm Co. v. Cooper*, 83 *Ga.* 457, this court held :  "Where one prepares a proprietary or patent medicine and puts it upon the market and recommends it to the world as useful for the cure of certain diseases, the bottle containing it having therewith a prescription made by the proprietor of the medicine, in which he states that it is to be taken in certain quantities, and the medicine with this prescription is sold by the proprietor to a druggist for the purpose of being resold to persons who might wish to use it, and the druggist sells the same to a person who uses it in the quantity thus prescribed, and the same contains an ingredient such as iodide of potash in such quantity as proves harmful to the person thus using it, the proprietor is liable."     We recognize that there is some distinction between the case cited and the case now under consideration, but it seems clear that the same principle of law is applicable in both. Many courts have laid down a different rule governing the sale of articles which are inherently dangerous, such as a deadly poison or a powerful explosive, from that which is applied to the sale of ordinary articles of commerce; holding that the negligent sale, shipment, or handling of such inherently dangerous articles will render the negligent person liable to any one who may be injured by reason of his negligence, regardless of the question of privity between them, while as to articles not inherently dangerous there must be some privity between the parties to give a right of action.     This rule, however, can have no application to the present case, in view of the fact that the petition distinctly alleges that the plaintiff's use of the buggy was contemplated by the defendants when the sale was made, that they knew of the defect in the spindle, and that they concealed this defect from

him by the use of paint and grease and represented to him that the buggy was in perfect condition. The case of *Cobb* v. *Clark Co.*, 118 *Ga.* 483, cited in the brief of counsel for the defendants, has no bearing upon the case now under discussion. There the plaintiff entered into a written contract with a building company which was erecting a building adjoining his premises, concerning the building of a party wall between the two buildings. The defendant, a contractor for the building company, was not a party to this contract. The suit was brought against it for alleged negligence in the erection of the wall for the building company. This court held, necessarily, that whatever duty was owed to the plaintiff in the construction of the wall was by the building company, with which he had a written contract on the subject; that the defendant owed the plaintiff no duty, and was not liable to him in damages.

2. There was no error in allowing the amendments to the petition. These amendments merely amplified the original petition, and set out more in detail the nature of the alleged defect in the buggy and the circumstances of the plaintiff's injury. By no construction can they be held to introduce a new cause of action.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*