## 35223. THE WARREN COMPANY, INC. *v.* STARLING.

DECIDED OCTOBER 11, 1954—ADHERED TO ON REHEARING DECEMBER 9, 1954.

*J. B. Copeland,* for plaintiff in error.

*Robert B. Sumner,* contra.

QUILLIAN, J. The Warren Company, Incorporated, foreclosed a conditional-sale contract against W. P. Starling in Atkinson Superior Court. The portions of the contract pertinent to a consideration of this case read: "If any of said indebtedness shall become due and remain unpaid or if chattel is removed or attempted to be removed or in anywise disposed of or encumbered or attempted so to be, or whenever you shall deem yourselves or your assigns shall deem themselves insecure, or should any surety company or any bond guaranteeing performance of any of my obligations hereunder, or indemnifying you or your assigns or the holder of said note against loss through conversion or otherwise, desire to withdraw from said bond, then, in any of the aforesaid cases, all of the unpaid instalments shall at the option to anyone, become due and payable and I or we agree to return said chattel on demand, and you and your assigns may without notice of demand and without legal process enter into any premises where said chattel may be and take possession thereof and make such disposition as may be deemed by you or your assigns desirable and all payments made shall be retained as liquidated damages for the use of said chattel and not as a penalty, or said chattel may be sold with or without notice at public or private sale at which you or your assigns may purchase and the proceeds thereof less expenses of retaking, repairing, holding and reselling such property including 15% of the then unpaid balance or, at the option of you and your assigns, a reasonable sum as attorney's fees, credited upon the amount un-

paid and in either event as liquidated damages for the breach of this contract. . . No oral agreement, past, present or future, respecting said chattel or my (our) obligations hereunder shall bind you or your assigns. I or we expressly waive all exemptions and homestead laws and acknowledge receipt of a true copy of this agreement. It is agreed that on all refrigerators covered by this contract, whether sold with or without refrigerating units, control switches, or valves, that you or your assigns assume no responsibility for the failure of the refrigerators to properly function nor the loss of merchandise. The full guarantee on the refrigeration and the appurtenances thereto is covered by the seller's standard printed product warranty."

The defendant, W. P. Starling, filed an illegality, which when amended read: "Before me, G. Q. James, of said county, an officer of said State authorized by law to administer oaths, personally appeared W. P. Starling, who on oath says. that the above described fi. fa. heretofore levied upon property of defendant is proceeding illegally; that the deponent is not indebted to plaintiff in any amount, and that the conditional-sale contract foreclosed is utterly void and without consideration for that: (1) Defendant avers that the plaintiff by and through its duly authorized agent and salesman, one H. H. Smith, who approximately ten days prior to the execution of that certain conditional-sale contract attached to and made a part of the plaintiff's foreclosure proceeding against same, willfully and fraudulently induced the defendant to execute said contract for the purchase of one W. O. D. D. Case, Serial No. FD 15-1811, together with time compressor Serial No. 1109168, by fraudulently warranting that said case would reach and maintain any temperature desired in the top shelf necessary for preserving and keeping fresh meats and other produce, which would otherwise spoil, free from spoiling. Said agent knowing that the same was not true. The defendant having expressly notified the said agent of the plaintiff that he desired the said case for display purposes and having asked him specifically if the same would reach a temperature on the top shelf of a sufficient degree to preserve perishable goods.

"(2) The defendant relying upon said fraudulent allegation and warranty, executed the said contract on the date as afore-

said and paid to the plaintiff the sum of $326.50 on the date of the execution of the same, and paid the further sum of $52.25 on May 1, 1953.

"(3) That defendant shortly after the 1st of May, 1953, and on or about the 7th day of May, 1953, found that the allegations and warranty made by the plaintiff's duly authorized agent was not true and that his fresh meats and other perishable goods of the value of $150 placed upon the top shelf were spoiled and ruined. Upon discovery of said fact the defendant unconditionally tendered back said case to the plaintiff's agent and asked him to return the money previously paid on same.

"(4) That the loss as aforesaid suffered by the defendant resulted from and was caused by the fraudulent representation and warranty of the plaintiff's agent.

"(5) That as a result of the facts hereinabove stated the defendant is entitled to a rescission of the contract and recoupment of the amounts paid by him to the defendant [plaintiff] as hereinabove stated, and for the value of the spoiled produce."

The trial court denied the motion of the plaintiff's counsel to dismiss the amended affidavit of illegality, and the plaintiff excepted.

Careful examination of the defense in this case discloses that it presents no contention that the plaintiff made warranties or representations relating only to the future. The affidavit of illegality set up that the plaintiff's agent made the representation that the refrigerator which he was then seeking to induce the defendant to buy, and which the defendant relying upon his representations, did buy, would produce certain given results meeting the specifications that the defendant told the agent would be necessary in his use of the refrigerator case. The plaintiff's agent, it is related, informed the defendant that the refrigerator case would produce these desired results.

If the affidavit of illegality had stopped there, it would have alleged little if any more than a mere speculative prediction on the part of the agent which alone would not furnish any basis for a defense. But the affidavit of illegality continues by setting out that the agent knew at the time he made the statement that the refrigerator could not function according to the prediction he was then making that it would fill the defendant's requirements.

This was no mere representation or warranty as to what would occur in the future, but was a representation that at the present time, when the representation was made, the refrigerator was suited for the use to which the defendant intended to put it. When the affidavit of illegality added to allegations that the plaintiff's agent knew that this representation was false, and that the defendant, acting upon it, purchased the refrigerator and signed the instrument sued upon, it set up a good defense against the plaintiff's general demurrer. *Southern* v. *Floyd*, 89 *Ga. App.* 602 (80 S. E. 2d 490).

Wilful concealment of a defect in an article, or inherent lack of quality in it, is a species of fraud that renders all the provisions of the contract of sale of that article subject to rescission. *Stovall* v. *Rumble*, 71 *Ga. App.* 30 (29 S. E. 2d 804); *Woodward* v. *Miller*, 119 *Ga.* 618 (46 S. E. 847, 64 L. R. A. 932, 100 Am. St. R. 188).

The allegations are sufficient to allege a presently existing deficiency or lack of quality in the refrigerator, concealed by the plaintiff's agent, of such a nature that, had the defendant known of it, he would not have bought the refrigerator. *Davis* v. *Hopkins*, 50 *Ga. App.* 654 (179 S. E. 213); *Woodward* v. *Miller*, supra.

Cases cited by the plaintiff in error—holding that purely speculative representations of the seller amounting to no more than predictions as to how well the commodity sold would suit the purpose of the buyer, cannot be the basis of a defense to a suit brought for the purchase price of the article sold (*Fudge* v. *Kelley*, 4 *Ga. App.* 630, 62 S. E. 96); that fraud that will relieve a party of the duty to read a contract must be of such nature as to prevent him from reading it (*Wynn* v. *First National Bank of Newnan*, 176 *Ga.* 218 (2), 167 S. E. 513); that a party cannot deny his contract or maintain that it was procured by fraud when he actually knows its contents (*Rounsaville & Bro.* v. *Leonard Mfg. Co.*, 127 *Ga.* 735, 56 S. E. 1030); that a party to a contract is presumed to be able to read, unless the contrary appears (*Branan* v. *Warfield & Lee*, 3 *Ga. App.* 586, 588, 60 S. E. 325); and that a party cannot under the guise of inquiring into the consideration of a contract substitute an entirely different agreement from that entered into by the parties (*Equitable Mfg.*

*Co.* v. *Biggers,* 121 *Ga.* 381, 49 S. E. 271)—are not applicable to the facts of this case.

In *Kontos* v. *Jordan,* 57 *Ga. App.* 267 (195 S. E. 210), cited by the plaintiff in error, the contract upon which the plaintiff sued contained a clause "There are no . . . representations, promises, or statements in connection with the sale of Frigidaire equipment hereunder, except as set forth in current manufacturer's warranty applying to equipment covered by this contract." In the contract decided upon in this present case there is no agreement or statement that representations or statements had not been made by the vendor to induce the buyer to sign the contract.

Moreover, what is held here is amply supported by the earlier cases of this court, and a decision of the Supreme Court. *Cunningham* v. *Huson Ice & Coal Co.,* 26 *Ga. App.* 302 (105 S. E. 860) ; *Atlanta Butchers Abattoir &c. Co.* v. *Reaves,* 54 *Ga. App.* 138 (187 S. E. 162) ; *Huson Ice & Coal Co.* v. *Thornton,* 143 *Ga.* 297 (84 S. E. 969).

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*