Mrs. Janie A. JOHNSON and James A. Johnson

v.

ERNEST G. BEAUDRY MOTOR CO.

Civ. A. No. 5718.

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 22, 1958.

Calhoun & Calhoun, Atlanta, Ga., for plaintiffs.

Moise, Post & Gardner, Atlanta, Ga., for defendant.

### SLOAN, District Judge.

The plaintiffs allege that the defendant sold to James A. Johnson a used motor vehicle and agreed that it would, for $600 and one-half of the cost of repairs to be paid by plaintiff, thoroughly inspect and put it in safe condition for his wife to drive.

Plaintiffs contend that the defendant delivered the vehicle to plaintiffs in an unsafe condition, with a defective tire which caused the vehicle to overturn and burn, injuring Mrs. Janie A. Johnson.

Mrs. Johnson sues to recover for her injuries. Mr. Johnson sues for expenses, loss of services and loss of consortium.

Defendant admits that it sold the vehicle to Johnson; denies that it made the agreement contended with respect to the general repair of the vehicle and denies that it is liable to plaintiffs in any way; denies that there was a defective tire on the vehicle, but avers that the plaintiffs assumed the risk of any defective tire that might have been on said vehicle.

The cause came on to be tried to the Court without a jury on December 1, 1958 and plaintiffs introduced evidence, the defendant introduced evidence and arguments of counsel were heard and now the Court, giving consideration to the evidence, makes the following

### Findings of Fact

At the time of the filing of this complaint the plaintiffs were citizens and residents of the State of North Carolina while the defendant was and is a Georgia corporation organized under the laws of Georgia with its principal office and place of doing business in Fulton County, Georgia.

Just prior to July 28, 1954, plaintiffs had been visiting Mr. Johnson's mother in the City of Atlanta, Georgia, intending to return to their home in Charlotte on Sunday, August 1st, and in view of the fact that Mr. Johnson had use for his automobile in his business, they decided to buy an additional automobile for Mrs. Johnson's use and that she would drive it back to Charlotte.

On Wednesday, July 28, 1954, Mr. & Mrs. Johnson went to the used car lot of the defendant in the City of Atlanta, Georgia and talked first to a Mr. Daniels, the assistant sales manager of the defendant, and Mr. Johnson told Mr. Daniels that he wished to purchase a car for his wife to drive and that he wanted a safe car that was in good condition. Mr. Daniels then called a salesman, Mr. L. H. Pruden, who showed Mr. & Mrs. Johnson a 1950 model Ford Station Wagon, Motor No. BOAT–158924. Mr. Daniels told the plaintiffs that the station wagon had belonged to a real estate dealer and that they knew the car and that it was in good shape, and that it was a good, clean car.

The station wagon here involved formerly belonged to Wall Realty Company who had purchased it as a used vehicle and had owned it for some time. On July 31, 1953 Wall Realty Company purchased two Fisk tires from Gordy Tire Company and had them mounted on the station wagon, and since Wall usually put the best tires on the front wheels, he feels sure that these tires were mounted on the front wheels of the station wagon and were not thereafter moved or changed. These were white side wall tires.

In April, 1954 W. O. Wall obtained the station wagon from Wall Realty Company and used it up until July 24, 1954 when he left it with Ernest G. Beaudry Motor Company and tried out a new Ford automobile. W. O. Wall agreed with the defendant company to trade them the station wagon on a new Ford automobile and they allowed him $904 on the purchase price of the new Ford. Wall testified that he never took the Fisk tires off the station wagon after they were put on. The defendant Beaudry placed the station wagon on its used car lot and placed a sales price of $600 on it, but never washed it, repaired it or inspected it from the time it was received until it was sold to Johnson.

Mrs. Johnson asked the salesman twice about the tires, and each time the salesman told her that the tires were good.

Mr. & Mrs. Johnson then tried out the automobile and drove it from the Beaudry used car lot a distance of about six miles to the home of Mr. Johnson's mother and while trying out the car, Mr. Johnson discovered a whine in the differential. He then left his wife at the home of his mother and returned the car to the Beaudry used car lot and told them of the noise that he had discovered in the rear end, or differential, and they assured Mr. Johnson that they would fix and remedy it. Mr. Johnson then, relying on the representations that had been made to him and to his wife, purchased the automobile, paying therefor the sum of $600. Mr. Johnson returned on Thursday to get the station wagon and found that they had been unable to repair it at the used car lot and would have to send it to the main repair shop up town. He then left the car there, returning for it on Friday and the defect of the noise had been corrected. He then accepted delivery of the car and carried it to his mother's home.

At the time they were negotiating for the purchase of the station wagon both Mr. & Mrs. Johnson looked the vehicle over and looked at the tires and they appeared to be in good condition, though Mr. Johnson did notice that the vehicle was equipped with white side wall tires and that the two front tires on the vehicle had been turned with the white side walls inside leaving the black side walls outside, but he attached no importance to this fact at that time.

The station wagon was not driven again until Sunday morning when the plaintiffs started to return to Charlotte, North Carolina. Mr. Johnson was driving his automobile and was in front and Mrs. Johnson was driving the newly purchased station wagon and was following some distance behind Mr. Johnson. Riding in the station wagon with Mrs. Johnson were her young son and her stepsister. They were driving along U. S. Highway 78 in a northeasterly direction on the road leading from Atlanta to Monroe, Georgia by way of Stone Mountain and Mrs. Johnson had reached a point on said highway near Logansville, Georgia, where the highway was straight and level, when she overtook two trucks, the one nearest Mrs. Johnson being a Mack truck owned and driven by George C. Kinard but leased to Phoenix Supply Company. Mrs. Johnson speeded up to pass these trucks, and after having so increased her speed, was driving at a rate of approximately 50 miles per hour and had passed the Phoenix truck and had almost passed the truck in front, with the rear wheels of the station wagon being approximately even with the front wheels of the second truck, when the left front tire of the station wagon blew out, causing the station wagon to swerve sharply to the left, the

left wheels going off the pavement and onto the shoulder of the road and after traveling along the shoulder of the road a distance of some 20 or 30 feet the station wagon swerved sharply to the right, crossed the highway in front of the truck, went down an embankment and turned over.

Mr. George C. Kinard, the driver of the Phoenix truck, saw the accident, stopped his truck and went immediately to the scene. Mrs. Johnson was dazed and partially unconscious and her stepsister was cut and bleeding. Mr. Kinard helped get the occupants out of the station wagon and they were sent to a hospital in Monroe, while Mr. Kinard and the driver of the truck which had been immediately in front of Kinard's truck remained at the scene for some time and examined the station wagon. The station wagon had turned over on its top, the wheels sticking up in the air and all of the tires were inflated except the left front tire which had blown out and they examined that tire and found the place where it had blown out.

Kinard and the other truck driver waited until the sheriff or deputy sheriff of Walton County arrived who also examined the tires and asked Kinard and the other truck driver to stop in Monroe at the courthouse and await his return so he could get their statements. They waited on the sheriff or deputy sheriff, gave him their statements and then went on their way. Kinard does not. remember the name of the other truck driver.

Mr. Johnson did not know of the accident for some time but when informed that there had been a wreck, he found that his wife and the children had been brought to the hospital in Monroe and he then had them transferred by ambulance to the Crawford W. Long hospital in Atlanta.

On the day following, on Monday, Mr. Johnson went back to Beaudry Motor Company, defendant, told them that the tire had blown causing the automobile to wreck and injure his wife whereupon Mr. Daniels inquired of some one, "Were those tires still on that station wagon,"

and someone answered him, "Yes, Sir," whereupon Mr. Daniels said "Oh my God."

Mr. Johnson employed Mr. Holley, an attorney, to represent him, and Mr. Kyle, Mr. Holley's law partner, and Mr. Holley with Mr. Johnson returned to the scene of the accident on Monday or Tuesday, August 2nd or 3rd. While there Mr. Kyle took photographs of the scene and Mr. Holley and Mr. Kyle located the station wagon which had been removed from the scene and examined the tire which had blown out and removed the tire, the tube and the wheel from the station wagon and brought them to Atlanta, and in company with a representative of the defendant, examined the tire and the tube and thereafter had the tire and the cut or break therein examined by others to determine the nature, character and extent of the break or rupture in the tire.

A number of people, expert in the tire field, examined the break in the automobile tire and gave their opinion as to the nature and cause of the break. The tire itself has been introduced in evidence and examined by the Court and while the evidence is not without conflict in this respect, the Court finds from a preponderance thereof, that the break in the tire was an old one existing at the time the automobile was purchased by Mr. Johnson and that the break was on the white side wall side of the tire which had been turned in to where it would not be exposed to view. The old break in the tire, as the wheel revolved, caused it to chew or abrade the tube weakening it and causing it to blow out.

As a result of the wreck Mrs. Johnson received a severe blow on her head which caused a concussion of the brain and she also had a broken collar bone. She was in the hospital for two or three days before she was fully rational and conscious and the setting of the collar bone was delayed until that time. Being unable to obtain a satisfactory union of the fractured collar bone, it was necessary for the surgeon to operate and insert a pin in the marrow of the collar bone to aid

in securing a proper union of the bone. This pin was about 4 inches long and was inserted in August, shortly after the injury, and was not removed until the following December. Mrs. Johnson suffered much pain and for a long time after the injury was highly nervous and when she would get into an automobile she would begin to tremble and perspire and become nauseated and would almost faint and as a result of her injuries here she was unable to attend to her household duties and Mr. Johnson was deprived of the companionship and consortium of his wife for a period of many months.

While in the hospital Dr. Bondurant performed an operation on Mrs. Johnson and attended her and his bill for services was $250, while due to the injury of the head, Dr. Bondurant thought it necessary that a neuro-surgeon, Dr. Dowman examine Mrs. Johnson and his fee for that service was $50. The expenses of the medical treatment, hospitalization as well as the expenses of the care of the home during the time that Mrs. Johnson was incapacitated were borne by Mr. Johnson.

The Court finds that the defendant represented to plaintiffs that the station wagon here involved was in good shape; that it was a good, clean car and that the tires on it were good.

The Court further finds that the defendant, either knew of the defect in the left front tire on such station wagon, or in the exercise of ordinary care should have known of such defect and that the failure of defendant to inform plaintiffs of such defect was the proximate cause of the injuries sustained by plaintiff, Mrs. Janie A. Johnson.

The Court finds that the plaintiff, James A. Johnson, suffered damages in the sum of $4,000 by reason of the loss of the services and consortium of his wife and expenses incurred by him in connection with her injuries.

The Court finds that the plaintiff, Mrs. Janie A. Johnson, suffered dam-

ages in the sum of $6,000 by reason of the injuries sustained by her.

Conclusions of Law

This Court has jurisdiction of the parties and subject matter.

While it is the general rule that a manufacturer or vendor is not liable to third persons who have no contractual relations with him for damages by reason of the construction, manufacture or sale of articles handled by him, a different rule applies where the nature of the thing is such that it is reasonably certain to place life and limb in danger if defective, such as a motor vehicle, and where there is added to this element of danger knowledge on the part of the manufacturer or seller that a vehicle will be used by persons other than the purchaser, without new tests then, irrespective of contract, a manufacturer is under a duty to make it carefully and a dealer is under a duty to use reasonable care in making tests for defects which would render the vehicle a menace to persons using or coming in contact with it, and to make such repairs as are necessary to render the vehicle reasonably safe for use on the highways. Blashfield's Automobile Law and Practice, §§ 4811, 4812; 65 C.J.S. Negligence § 100, pp. 619, 629, 630.

Where a seller of an article which is not inherently dangerous, but which is rendered dangerous by a defect therein, has knowledge of such defect and of the danger and fails to inform the purchaser of such defect, or represents the article to be safe and sound, the seller is liable for an injury to such purchaser or third persons as a result of such defect. The seller is deemed to have knowledge of such defect if the evidence shows that it was so plain that the exercise of ordinary care would have disclosed it. Blashfield's Automobile Law and Practice, § 4813; 65 C.J.S. Negligence § 100, pp. 633, 634.

An automobile dealer who falsely represents a vehicle to be in good condition, when he knows, or in the exercise of ordinary care should know that the

170

same is defective, is liable not only to the buyer but to third persons for injuries resulting from the defective condition. Blashfield's Automobile Law and Practice, § 4814.

 Where a contract imposes a legal duty upon a person, the neglect of such duty may give rise to an action in tort independent of plaintiff's right of action founded on a contract. Frank Graham Co. v. Graham, 90 Ga.App. 840, 841, 84 S.E.2d 579. See also, Woodward v. Miller, 119 Ga. 618, 46 S.E. 847, 64 L.R.A. 932.

Where an article which is sold is not one which commonly passes through the hands of a dealer in a sealed package, but is one which is readily and usually exposed in the process of selling, and where it is in fact defective and the defect is such as to reasonably attract the attention of a prudent dealer, such dealer may have a duty to discover and know of the defect, and in a suit against him to recover damages for injuries to one who was reasonably expected to use the article, such as the wife of the purchaser, the dealer will be held liable when he expressly represents that the article is safe, for the failure to exercise ordinary care to discover any defect which would make the representation untrue. Woodward v. Miller, supra; King Hardware Co. v. Ennis, 39 Ga.App. 355, 147 S.E. 119; Chitty v. Horne-Wilson, Inc., 92 Ga.App. 716, 89 S.E.2d 816.

"An assurance to the purchaser as to the strength, safety, or freedom from defect of the article is the equivalent of actual knowledge on the part of the dealer, since he thereby implies the existence of knowledge, and he acts at his peril if his representation proves untrue." Segal v. Carroll Furniture Co., 51 Ga.App. 164, 179 S.E. 775, 776.

The failure of defendant to warn plaintiffs of the defect in the left front tire of the station wagon here involved being the proximate cause of the injuries sustained by plaintiff, Mrs. Janie A. Johnson, defendant is liable to plaintiffs for the damages sustained by them by reason of such injuries to Mrs. Johnson.

Plaintiff, James A. Johnson is entitled to recover the sum of $4,000 from defendant and plaintiff, Mrs. Janie A. Johnson, is entitled to recover the sum of $6,000 from defendant.

Judgments may be prepared and presented.