61573. HOLMES et al. v. WORTHEY et al.

BIRDSONG, Judge.

The appellants, Mr. and Mrs. Holmes, appeal from the trial court's grant of appellees' motion to dismiss. Mr. and Mrs. Holmes bought a new house from appellees, who were the builders, and in

their complaint below sued appellees for defects in the construction of the house on theories of breach of contract and negligence. Appellees denied all the appellants' causal averments, and responded that on September 22, 1978, appellees conveyed certain property to the Holmes by warranty deed, and "all work done by these defendants . . . and any of the provisions in the contract upon which plaintiffs sue have been merged into said warranty deed by operation of law." Finally appellees averred that they have no duty to the appellants with respect to the home conveyed to them by the warranty deed, and the only warranty made to the appellants was a warranty of title to their property. Appellees argued the defenses of caveat emptor and merger on their motion to dismiss.

On appeal, the appellants contend the trial court erred as a matter of law in holding that the contractual duty of a vendor-builder to construct a dwelling in a skillful and workmanlike manner is merged into and does not survive the delivery of the deed. Plaintiffs-appellants argue that the doctrine of caveat emptor and the question of merger of prior agreements into a subsequent deed are dependent upon the intent of the parties( *Helmer v. Hegidio,* 133 Ga. App. 168, 169 (210 SE2d 332)), and that they have causes of action for breach of contract and negligence against the builder-vendor of a new house, citing *Howell v. Ayers,* 129 Ga. App. 899 (202 SE2d 189). Appellees principally rely upon *Collier v. Sinkoe,* 135 Ga. App. 732, 733 (218 SE2d 910) for the defense of caveat emptor, and cite *Amos v. McDonald,* 123 Ga. App. 509, 510 (181 SE2d 515) as authority for merger in that "[except for express warranties] agreements for the construction of a house to be placed on the property at the time of purchase are merged in the deed unless expressly exempted therefrom or unless they come under the collateral agreement theory . . . with certain exceptions relating to fraud and misrepresentation . . . ." Appellees thus argue that since appellants did not plead or show fraud or misrepresentation, they are without cause to sue.

The contract in this case is a form contract, dated June, 1978, between appellants and appellee Jack Worthey to buy and sell " all that tract of land" of a certain description and address, with special stipulations added on whereby appellees were required to construct a house pursuant to certain specifications. *Held:*

1. We reverse.

In *Welding Prod. v. Kuniansky,* 125 Ga. App. 537, 538 (188 SE2d 278), this court said: "Under the law of this State, *absent fraudulent concealment of known defects,* a seller-builder who conveys the realty and improvements thereon after completion is not liable to the purchaser thereof for property damages allegedly resulting from negligent construction. [Cits.]" (Emphasis supplied.) In *Amos v.*

*McDonald,* supra, we said: "The doctrine of 'caveat emptor' applies; [except for express warranties] agreements for the construction of a house to be placed on the property at the time of purchase are merged in the deed unless expressly exempted therefrom or unless they come under the collateral agreement theory . . . with certain exceptions relating to fraud and misrepresentation . . . [Cits.]"

In most Georgia cases dealing with the subject of a builder-seller's liability for defects in construction of a house, the extrapolation is made, implicitly or expressly, that since there is no implied warranty of fitness in the sale of a house, the doctrine of caveat emptor applies and therefore there can be no action for negligence. See for instance *Dooley v. Berkner,* 113 Ga. App. 162 (147 SE2d 685). Some Georgia cases have mixed the principles of merger and caveat emptor to defeat a homebuyer's action based on defective construction (see *Amos v. McDonald,* supra); some have confused principles of negligence (tort) with principles of merger (contract) (see *Reynolds v. Wilson,* 121 Ga. App. 153, 156-157 (173 SE2d 256); some have hinged the question of merger to whether agreements were to be performed, in point of time, after delivery of the deed (see *Cullens v. Woodruff,* 137 Ga. App. 262 (223 SE2d 293); *Reynolds v. Wilson,* supra; and *McKee v. Cartledge,* 79 Ga. App. 629, 632 (54 SE2d 665)). And in *Walton v. Petty,* 107 Ga. App. 753 (131 SE2d 655), we went so far as to say that in the absence of express warranties of fitness reserved in the deed, no action can be brought *even for fraud in concealment of defects,* since there are no implied warranties as to the condition of the house and the rule of caveat emptor applies.

From all this it can be seen that Georgia law in this field has not progressed beyond general common law concepts of the sale of real estate (land), i.e., is "not yet fully developed" (Pindar, Ga. Real Estate Law, § 18-23 (2d Ed.)) and that the question of a homebuyer's remedy against the builder-seller of a defective house is weighted against the homebuyer unless he can clearly show fraud, or in rarer cases, an imminently dangerous condition (see *Whiten v. Orr Const. Co.,* 109 Ga. App. 267, 269 (136 SE2d 136)), or that the plain intention of the parties was to create an express warranty of fitness or contractual duty which would in time of performance survive the delivery of the deed.

We have determined that this past development of law is insupportable and is not in harmony with public policy considerations of this state or with modern business realities. It is aptly pointed out in 25 ALR3d "Liability of Builder-Vendor or Other Vendor of New Dwelling for Loss, Injury, or Damage occasioned by Defective Condition Thereof," § 2 (a), p. 390, that "the large scale, almost assembly line, production of houses on tracts owned and

developed by the same individuals or corporations or connected entities which actually construct the houses began shortly after World War II and has continued unabated. . . ." Courts have continued to treat such home purchases in the same manner as if they were traditional purchases in realty "and appurtenances thereon," with rules of merger of previous negotiations and the ancient doctrine of caveat emptor being applied (see esp. Restatement of Torts 2d, § 352; 25 ALR3d 390, fn. 12). "Thus there has been only slight recognition, if any, that in the sale of a new house, the primary purpose of the transaction is to provide a habitable dwelling for the purchaser, and the transfer of the land to him as vendee is secondary." 25 ALR3d 391, supra.

An interesting statement in Georgia law dramatically illustrates that last point and the significance of it. In *Reynolds v. Wilson,* supra, p. 153, we said: "The sale of the dwelling, of necessity, arose out of the sale of realty on which the dwelling was constructed," and proceeded to reason the case as if this were so. But the obvious reality of that case is that those suburban DeKalb County homebuyers had not primarily bought a piece of land, but had primarily bought a dwelling to which, of necessity, a piece of realty was attached, and from a seller who was obviously in the business of building and selling dwellings. We therefore must look askance at that case and all the others like it, for to the extent that it is compelled to distort the realities of the situation to justify its reasoning, it proves its own weakness. In his special concurrence in *Amos v. McDonald,* supra, pp. 511-512, Judge Deen of this court expressed distress that in cases of this type the doctrine of caveat emptor has been revived "in all its viciousness, disregarding the rulings of a number of jurisdictions . . . that where the defect is latent and the vendee could not reasonably have discovered it his action will not be barred because 'the common law as a vehicle of justice . . . possesses an infinite capacity to grow, to keep abreast of current requirements, and to be alert to changing needs and mores.' [Cits.] ("The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times.'" See also *Wilhite v. Mays,* 140 Ga. App. 816, 818 (232 SE2d 141).

## I. Merger

The recent decision in *P. B. R. Enterprises v. Perren,* 243 Ga. 280 (253 SE2d 765) disposed of cases where prior oral promises are made to complete a house after its purchase and where oral express warranties are given, by holding that such oral promises and agreements, not having been expressly included in the sales contract, merge into and are extinguished by the deed. (Compare, however,

*Little v. Merck,* 124 Ga. App. 73, 75 (183 SE2d 234), and *Kollen v. High Point Forest,* 104 Ga. App. 713, 714 (123 SE2d 10) and see especially *McKee v. Cartledge,* supra.) So long as that court adheres to such a rationale, we are of course bound by its decision in the *P. B. R.,* case as to oral agreements or promises, but in the case before us, we must decide whether *written contractual agreements* to build a house, which agreements are or are not included in the sales contract, will merge into the deed and thus defeat the homebuyer's action for breach of contract for failure to construct the dwelling in a fit and workmanlike manner, which is the duty implied in the contract to build ( *Howell v. Ayers,* supra).

The notion that the doctrine of merger of contracts operates to defeat an action against the builder-seller for breach of contract (in failing to construct the dwelling in a fit and workmanlike manner, see *Howell v. Ayers,* supra), arose from the principle that prior stipulations of a *contract to convey property* are merged in the final and formal contract, which is the deed. *Augusta Land Co. v. Augusta R. &c. Co.,* 140 Ga. 519, 522 (79 SE 138). It is of course good law to say that "when a deed is delivered and accepted *as performance of a contract to convey,* the contract is merged in the deed." (Emphasis supplied.) *Augusta Land Co.,* supra. The deed is the consummation of the agreement to sell the land, including what is on it. *Augusta Land Co.,* supra; see *Jordan v. Flynt,* 240 Ga. 359, 361 (240 SE2d 858); *Cullens v. Woodruff,* supra, p. 262. But application of this principle of merger to the transactions between a homebuyer and a builder-seller, where the contract to sell clearly contains provisions for construction or improvements, raises serious problems. It is not enough to say that these provisions do not merge into the deed in cases where a warranty is provided which survives the deed *in point of time* (see *Helmer v. Hegidio,* supra; and see especially *Postell v. Hearn,* 104 Ga. App. 765, 766-768 (123 SE2d 13) and *Knight v. Hedden,* 112 Ga. App. 847, 850 (146 SE2d 556)), or where certain work is to be completed after delivery of title to the property ( *Cullens v. Woodruff,* supra; *Reynolds v. Wilson,* supra, p. 156; *McKee v. Cartledge,* supra). Such exceptions based purely on time of performance seem to us a superficial distinction which very often defeats the homebuyer's case by effecting a merger into the deed in cases where the sales contract was obviously not just a contract to convey land and improvements, but was a contract to convey *and a contract to build.* Stipulations and provisions for building and construction of a house, whether to be performed or completed before or after the transfer of the deed, are clearly not a mere agreement to convey.

The real merger-exception rule in the sale of realty is that

"where the antecedent contract contains provisions imposing obligations upon the vendor *other than those relating to title or possession, and . . . collateral thereto. . .* such collateral provisions will be held to survive the deed." (Emphasis supplied) *Helmer v. Hegidio,* supra, p. 169; *Knight v. Hedden,* 112 Ga. App. 847, 848 (146 SE2d 556); and see *Moxley v. Adams,* 190 Ga. 164 (3) (8 SE2d 525). Where the antecedent contract contains an agreement to build, repair or construct as well as an agreement to convey, it is too plain to debate that the actual transfer of the deed (which passes only legal title) is "only a part performance of the provisions of the antecedent . . . contract." *Cullens v. Woodruff,* supra, p. 263, and that the agreements to build or construct "come under the collateral agreement theory" and hence are clearly exempted from the operation of merger in the first place. *Amos v. McDonald,* supra. The practice of calling such a dual-purpose antecedent contract a mere "sales contract," so as to effect its entire merger into the deed, ignores the true nature of the agreement and ignores modern business reality with the result of substantial injustice to uncounted homebuyers in this state.

The rational basis for the merger rule is that where parties enter into a final contract all prior negotiations, understandings, and agreements *"on the same subject"* are merged into the final contract, and are accordingly extinguished. See 17 AmJur2d 952, Contracts, § 483. We therefore think that although it is always the case that the question of merger is one of intention of the parties ( *Bryant v. Turner,* 150 Ga. App. 65, 66 (256 SE2d 667)), where the antecedent contract or contracts clearly provide for agreements or stipulations to build or construct *as well as* an agreement to convey, it is plain that the actual transfer of the deed, which is performance only of the agreement to convey does not extinguish any duties and obligations arising out of the agreement to build. In such a case where clearly the builder-seller was to build as well as sell, the duties and obligations with regard to construction do not merge into the deed passing title, and the intention of the parties ought not to be in question.

In this case the defendants builder-sellers are sued on a count for breach of contract by virtue of their failure to install a suitable and workmanlike roof. The contract, which purports to be a contract for sale of a lot of land alone, contains written stipulations requiring defendants to construct a certain specified house thereon. While generally the question of intent to merge is for the jury, it is beyond argument that the agreement to build is collateral to the agreement to sell, that it imposes obligations on the seller other than those relating to title and possession, and that the mere sale or conveyance of the lot of land alone — or of the lot of land and an unfinished house — would

be only part performance of the obligations entered into by the builder-seller to make a certain improvement. *Helmer v. Hegidio, supra, Amos v. McDonald,* supra; *Knight v. Hedden,* supra. Hence these agreements to build appended to one to convey do not come within the merger rule in the first place; and therefore it is not necessary for the complainant to allege that merger was not intended (as implied in *Knight v. Hedden,* supra and *Postell v. Hearn,* supra), and it is irrelevant what point in time the construction was to be performed. We hereby overrule any implication in cases like *Cullens v. Woodruff, Helmer v. Hegidio, Little v. Merck, Reynolds v. Wilson, Knight v. Hedden, Postell v. Hearn, Kollen v. High Point Forest* and *McKee v. Cartledge,* supra that such determinations control the question of merger. The contract obligation to build the house was not merged into or extinguished by the deed of conveyance, and the trial court erred in dismissing the homebuyer's action for breach of contract for appellees' failure to perform the contract in a fit and workmanlike manner, which is the duty implied in every contract. *Howell v. Ayers,* supra.

## II. Caveat Emptor

An initial point for consideration is the misapprehension of some authorities that the principle of merger might in some way defeat the builder-seller's liability under negligence law to use reasonable care and diligence in constructing the improvements (see, e.g., *Reynolds v. Wilson,* supra). The fact is that merger is a contract law principle that antecedent agreements on the same subject matter are presumed to be included in the final contract. It is an apple to the orange of negligence law, and has no application to the duty of care which has its source in the law of torts and not in the law of contracts. *Kuhr Bros. v. Spahos,* 89 Ga. App. 885, 887-888 (81 SE2d 491), overruled on other grounds in *Whiten v. Orr Const. Co.,* supra; *Woodward v. Miller,* 119 Ga. 618 (46 SE 847); MacPherson v. Buick Motor Co., 217 N. Y. 382 (111 NE 1050). The principle of merger surely may be a defense to a count for breach of contract, but certainly not to a count for negligence.

The issues we address in the instant case are not in conflict with the very recent case of *P. B. R. Enterprises v. Perren,* 158 Ga. App. 24 (279 SE2d 292), decided after remand and trial of the case pursuant to the Supreme Court's decision in *P. B. R. Enterprises v. Perren,* 243 Ga. 280, supra. In *P. B. R.* the defendants may have known of certain defects in the house purchased and, although knowing the buyers were acting under a misapprehension of important facts, failed to enlighten the buyers. The Supreme Court held this may constitute an action for fraud by "passive concealment," a third more apathetic form of fraud created as a further exception to caveat emptor by this

court in *Wilhite v. Mays,* supra. As Judge Pope said when the case reappeared in this court, "this cause of action places upon the seller a duty to disclose defects . . . [where he] has special knowledge not apparent to the purchaser . . . [and is] aware that purchaser is acting under a misapprehension [as to important facts]." ( *P. B. R.,* 158 Ga. App. 24, supra). The trial judge in *P. B. R.,* after remand from the Supreme Court, ignored the issue of fraud and charged for breach of contract but as Judge Pope held, it erred in doing so because there was no written agreement and the Supreme Court had already held that any oral agreements had merged into the deed ( *P. B. R.,* 243 Ga. 280, supra, at p. 282). Neither the Supreme Court nor the Court of Appeals in the respective appearances of the case, confronted or dealt with a cause of action for negligence, which is what we deal with in the case sub judice.

In this case no allegations of fraud are made and there is no evidence of it. We are confronted with an allegation in Count 2 by the appellant homebuyers that the appellees builder-seller were "negligent in the performance of contractual duty," in that they did not construct the roof of the dwelling in a skillful, careful, diligent and workmanlike manner. It ought to be clear from our discussion above, however, that an allegation of failure to perform a contract in a skillful and workmanlike manner is an action under the contract, as a breach. This the plaintiff established in Count 1 of his complaint. We see Count 2 of the complaint, therefore, as an action in negligence, which might exist side by side with a count for breach of contract and for which privity is not required (see *Woodward v. Miller,* supra and see esp. MacPherson v. Buick Motor Co., supra). Moreover, the parties have argued it as a count for negligence, and the appellees succeeded in its dismissal in the trial court on grounds of caveat emptor, which principle does not extinguish duties and obligations grounded in contracts.

We are not concerned here with an action for breach of implied warranty although the action for breach of implied warranty has been equated and confused with the action for negligence (see, e.g., *Dooley v. Berkner,* supra), in fact they are not at all the same thing. While courts have said there is no implied warranty in the physical condition of the house built, the action for negligence is provided by law and it "becomes particularly important when for any reason a warranty cannot be found." Prosser, Law of Torts 648, Ch. 18, § 95 (3d Ed.)

An action for negligence exists in Georgia against manufacturers in products liability cases, against independent contractors by owners of real estate, and as between owners of land, independent contractors and injured third persons (see 25 ALR3d 391). We have

searched our conscience and the legal precedents, and can find no good reason for exalting the builder-seller of houses above manufacturers or other builders, and not even any policy statement as to why this should be the law. The doctrine seems to have sprung up from the statutory and common law principle that "in the sale of *land* there is no implied warranty of *title*" (Code Ann. § 29-302, emphasis supplied; and see *Reynolds v. Wilson,* supra, p. 156), but we think it is a huge and ungainly leap from that principle to the conclusions that there is no implied warranty in the fitness of a house sold by a builder-seller, that therefore caveat emptor applies and that consequently there is not even any action for negligence in the absence of fraud in the concealment of a known defect. (See *Welding Prod. v. Kuniansky,* supra.)

We agree with the analysis made at 25 ALR3d 391, "Defective Home-Vendor's Liability," § 2 (a): "[T]he decided trend of modern decisions is to make a distinction with respect to a vendor who is also the builder of a new structure, and that where the vendor is also the builder, he is today, by the weight of modern authority, held liable for damages ... occurring after the surrender of title and possession. ... Similarly, it has been said that the trend of recent judicial decisions is to invoke the doctrine of implied warranty of fitness in cases involving sale of new houses by the builder; that the old rule of caveat emptor does not satisfy the demands of justice in such cases; that the purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime; and that to apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice.

"Where a vendee buys a development house from an advertised model, he clearly relies on the skill of the developer and on its implied representation that the house will be erected in a reasonably workmanlike manner and will be reasonably fit for habitation, and since he has no architect or other professional adviser of his own, he has no real competency to inspect on his own, his actual examination is, in the nature of things, largely superficial, and his opportunity for obtaining meaningful protective changes in the conveyancing documents prepared by the builder-vendor is negligible.

"Obviously the ordinary purchaser is not in a position to ascertain when there is a defect in a chimney flue, or vent of a heating apparatus, or whether the plumbing work covered by a concrete slab foundation is faulty, *so that the caveat emptor rule as applied to new houses is an anachronism out of harmony with modern home-buying practices,* and does a disservice not only to the ordinary prudent

purchaser but to the home building industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work." (Emphasis supplied.)

We conclude there is no reason that builders and sellers of dwellings should not be held liable for negligence in the proper case. Nor is there any logic in the anomalous results of *Amos v. McDonald,* supra, where it was more or less said that the doctrine of caveat emptor would have prevented recovery against McDonald if he had been a builder-vendor (and, in fact, it apparently had been alleged that he really was the builder-vendor), but that since McDonald was merely the builder he could be liable on a count of negligence. (We do of course approve of that case insofar as it holds the builder alone can be liable on a count of negligence, and we think that the builder's liability for defective construction must not be diverted merely because the property was conveyed through another entity.) We overrule cases such as *Cullens v. Woodruff, Little v. Merck, Amos v. McDonald, Reynolds v. Wilson, Dooley v. Berkner, Whiten v. Orr Const. Co.,* and *Walton v. Petty,* supra, where and to the extent that they have held there is no action for negligence against a builder-seller; and we overrule as no longer expressive of an appropriate legal principle the statement in *Welding Prod. v. Kuniansky,* supra, p. 538, that "absent fraudulent concealment of known defects, a seller-builder ... is not liable to the purchaser ... for property damages allegedly resulting from negligent construction."

In one of the earliest Georgia cases in this field of law, where the plaintiff homebuyer had sued the seller-builder in negligence, it was held to be a correct principle of law that "if there is a concealed defect in the [house], known to the seller, *or which by the exercise of ordinary prudence should have been known by him, and which an ordinarily prudent examination would have discovered,* the seller was bound to reveal it to the purchaser." (Emphasis supplied.) *Davis v. Hopkins,* 50 Ga. App. 654, 656 (179 SE 213). This we find to be the oldest law on the subject and, on reflection, the best. It was slighted and distorted in *Whiten v. Orr Const. Co.,* supra, p. 269, where the court held that the latent defects, to be actionable, had to be actually known to the builder-seller (but failing to include the words "should have been known") so as to constitute fraud, but we intend to restore the case of *Davis v. Hopkins,* to its original stature.

Consistent with the Supreme Court's decision in *P. B. R.,* 243 Ga. 280, supra at p. 281 that *"subject to certain exceptions,* the doctrine of caveat emptor applies to the sale of realty, there are no implied warranties as to the physical condition of the property sold, [and] the purchaser buys at his own risk ..." (emphasis supplied), we

hold that while the buyer of a dwelling in this state presently may have no action under implied warranty, he does have a cause of action in negligence against a builder or a builder-seller for defective construction in an existing dwelling, a partially constructed or unfinished dwelling or a house which the builder or the builder-seller agrees to build, finish or repair. As we first said in *Davis v. Hopkins* in 1934, the builder-seller's liability is for latent defects of which he knew or should have known in the exercise of ordinary care, and which the homebuyer in the exercise of ordinary care could not have discovered. It should not be necessary that the defect be literally "concealed," but only such as the buyer could not reasonably have discovered. From the statement just quoted from 25 ALR3d 391, it will be seen that in most cases the builder-seller who is engaged in the business of building and selling dwellings, as one who impliedly purports to possess and use the skill reasonable to the industry and has the clearest opportunity to know and correct defects, will as a factual matter and consistent with general negligence law (see Code Ann. § 105-201) be accountable for a greater duty of care than the usual homebuyer. But the defect must be latent and therefore not such as the ordinarily prudent homebuyer could reasonable have discovered (see Code Ann. § 105-603).

We cannot go so far as to say (as the California court did in Sabella v. Wisler, 377 P2d 889, 893) that the doctrine of caveat emptor has no application to negligence cases of this kind. See also 25 ALR3d 391, quoted infra. To the homebuyers, we must still say "caveat emptor" (see *P. B. R. Enterprises,* 243 Ga. 280, supra, at p. 281), except in cases of fraud and except where a dwelling is sold containing latent defects which the builder in the exercise of ordinary care knew or should have known and which the buyer could not have reasonably discovered in the exercise of ordinary care on his own part. It is only right in such cases that the builder should be liable in negligence. As to this it makes no difference whether the dwelling is built or renovated specifically for the buyer, or whether it is built for sale generally to the public or class of persons of whom the buyer is a member, since privity is not required to found an action for negligence. See *Woodward v. Miller,* supra; and see esp. Sabella v. Wisler, supra; MacPherson v. Buick Motor Co., supra.

The homebuyers in this case stated a cause of action for negligence against the builder-seller defendants; accordingly, the trial court erred in dismissing the complaint as a matter of law merely because the plaintiffs did not allege fraud.

*Judgment reversed. Quillian, C. J., Deen, P. J., Shulman, P. J., Sognier and Pope, JJ., concur. McMurray, P. J., Banke and Carley, JJ., concur specially.*

*Hylton B. Dupree, Jr., Stephen C. Steele,* for appellants.
*G. Robert Howard,* for appellees.

CARLEY, Judge, concurring specially.

I concur in the judgment of the majority of this court reversing the judgment of the trial court. However, I do so only because this appeal is from the trial court's judgment granting a motion to dismiss for failure to state a claim upon which relief can be granted under Section 12 (b) (6) of the Civil Practice Act (Code Ann. § 81A-112 (b) (6)). Since the record contains nothing other than the pleadings, the motion was not converted into a motion for summary judgment under Section 56 of the CPA (Code Ann. § 81A-156). The trial court's order on the motion indicated that it considered only the complaint and exhibits and thus the ruling of the trial court cannot even be viewed as the resolution of a motion for judgment on the pleadings under Section 12 (c) of the CPA (Code Ann. § 81A-112 (c)). "A motion to dismiss a complaint should not be granted for failure to state a claim unless the complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim." *American Nat. Bank &c. Co. v. Davis,* 241 Ga. 333 (245 SE2d 291) (1978). "It must be remembered that the objective of the CPA is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details." *Dillingham v. Doctors Clinic,* 236 Ga. 302, 303 (223 SE2d 625) (1976). Thus, for a dismissal of complaint under Code Ann. § 81A-112 (b) to be proper, it must appear clearly and without doubt that the complaint shows that the pleader cannot recover under any state of facts that may be developed by the evidence. It is not enough that the complaint *fails* to demonstrate that the pleader is entitled to recover.

When the principles inherent in the notice pleading concept are applied to the complaint in this case, it is clear to me that it was error for the trial court to dismiss the complaint as failing to state a claim upon which relief can be granted. However, I can neither agree with nor endorse the broad and sweeping language of the majority opinion and I cannot concur in the wholesale overruling of so many cases forming a part of the evolution of substantive law in this area. While, as stated, I believe that the plaintiffs are still in court at this stage of the litigation, the majority opinion purports to evince as the law of

the case a ruling that the plaintiffs would be entitled to recover upon proof of breach of contract as to one count and negligence as to the other even should later evidence demonstrate the applicability of the well established doctrines of merger and caveat emptor. With this I cannot agree. I concur in judgment only.

I am authorized to state that Presiding Judge McMurray and Judge Banke join in this special concurrence.